**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Attorneys On Signature Page]

*Attorneys for Plaintiff,*
*James Jiao*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# UNITED STATE DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JAMES JIAO, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**MERRILL LYNCH PIERCE, FENNER & SMITH, INC.; MERRILL LYNCH PROFESSIONAL CLEARING CORP.; WILLIAM TIRRELL, an Individual; and DOES, 1 through 100,**<br><br>**Defendants.** | **Case No.:** _'17CV409  L    MDD_<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>1.) FRAUD<br>2.) NEGLIGENCE<br>3.) NEGLIGENCE PER SE<br>4.) STATE SECURITIES FRAUD UNDER CALIFORNIA CORPORATIONS CODE § 27200 and 27101, *et seq.*<br>5.) THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT [18 U.S.C. § 1962(c)]<br>6.) THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT [18 U.S.C. § 1962(d)]<br><br>**JURY TRIAL REQUESTED** |

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

The plaintiff James Jiao ("Plaintiff" or "Mr. Jiao"), individually and behalf of all others similarly situated, complains and alleges as follows based on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge against defendants Merrill Lynch, Pierce, Fenner & Smith, Inc. ("MLPF&S"), Merrill Lynch Professional Clearing Corp. ("MLPro") (together "Merrill Lynch" or "ML"), William Tirrell ("Mr. Tirrell"), and DOES 1 through 100 (collectively the "Defendants"):

## BACKGROUND

1. On or about June 23, 2016, the Securities and Exchange Commission ("SEC") released an Order Instituting Administrative and Cease-And-Desist Proceedings, Pursuant To Sections 15(b) and 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease and Desist Order, concerning MLPF&S and MLPro (the "SEC Order"), which is attached hereto as Exhibit A.  Plaintiff incorporates by reference the claims, facts and admissions contained within the SEC Order.

2. The SEC found that Defendants "executed a series of trades that reduced the balance of its Reserve Account by billions of dollars and then used those freed-up funds to finance firm inventory and thereby finance its business activities."[1]

3. MLPF&S and MLPro were ordered to pay, jointly and severally,

---

[1] The Customer Protection Rule seeks to avoid, in the event of a broker-dealer failure, a delay in returning customer securities or worse, a shortfall in which customers are not made whole, by requiring broker-dealers to safeguard both the cash and securities of their customers.  Its requirements work to achieve this objective by "eliminat[ing] the use by broker-dealers of customer funds and securities to finance firm overhead and such firm activities as trading and underwriting through the separation of customer related activities from other broker-dealer operations."  Rule 15c3-3 Adopting Release, Exch. Rel. No. 9775, 1972 WL 125434, at *1 (Sept. 14, 1972).

disgorgement of unlawful profits of $50,000,000 obtained from illegal and fraudulent investing of their customer's funds. This disgorgement is not necessarily tied to the amount of profits Merril Lynch actually made from using client funds, which upon information and belief was in the tens of millions, if not more.

4. MLPF&S was ordered to pay a civil monetary penalty of $385,000,000 to the SEC for transfer to the general fund of the United States Treasury, based on illegal trading practices, including the improper investment of customer funds for MLPF&S's own business purposes.

5. The SEC Order does not address or remedy monetarily MLPF&S and MLPro's interference with its customer's entitlement to business relations with MLPF&S and MLPro that were uninhibited by schemes prohibited by law, including The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, *et seq.*

## PARTIES

6. Plaintiff, at all times relevant hereto, has been a resident of the State of California, County of San Diego.

7. MLPF&S is a corporation organized and existing under the laws of Delaware, but does business throughout California, including the county of San Diego, State of California.

8. MLPro is a corporation headquartered in New York, New York and is a direct, wholly-owned subsidiary of MLPF&S (collectively, "Merrill Lynch").

9. Upon information and belief, William Tirrell is a resident of Lawrenceville, NJ and is or was an associated person of broker-dealer and investment adviser MLPF&S. From 2004 until April 2016, he was the Financial and Operations Principal ("FinOp") and Head of the Regulatory Reporting Department for MLPF&S and in that role oversaw regulatory reporting for

MLPF&S and MLPro. Concurrent with that role, Tirrell was the Acting CFO of MLPF&S from August 2014 to April 2016.

10. Defendants are a group of entities and individuals associated together for a common purpose of engaging in financial institution fraud, by using trades to reduce the amount of cash required by Defendants to deposit in a customer Reserve Account that it maintained pursuant to Rule 15c3-3(e) of the Security Exchange Act of 1934, and to fraudulently invest customers' funds for Defendants' own purposes for financial gain, and therefore are an "Enterprise" as the term is defined by 18 U.S.C. § 1961(4).

11. Whenever this Complaint refers to any act or acts of Defendants, the reference shall also be deemed to mean that the directors, officers, employees, affiliates, controlling companies, or agents of the responsible Defendant who authorized such acts while actively engaged in the management, direction or control of the affairs of Defendant, and each of them, and/or by persons who are the alter ego of Defendants, or while acting within the scope of their agency, affiliation, control or employment. Whenever this Complaint refers to any act of Defendants, the reference shall be deemed to be the act of each Defendant, jointly and severally.

12. Plaintiff James Jiao is an individual and was a customer with Merrill Lynch from January 1, 2009 through December 31, 2012.  Upon information and belief, he currently resides in the county of San Diego, State of California.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court arises pursuant to 18 U.S.C. § 1962, *et seq.* for the RICO claims, and under 28 U.S.C. § 1367 for related state law claims.

14. Venue is proper in the Southern District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a) because Plaintiff resides in this federal District and certain transactions, act, practices and course of conduct constituting violations of the Federal Securities laws and California common

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

law occurred within this district.

## FACTUAL ALLEGATIONS

### *Relationships between Defendants*

15. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

16. Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc., founded in 1914, offers financial investment assistance and advice to individuals and companies, and is the wealth management division of Bank of America Corporation.

17. Defendant Merrill Lynch Professional Clearing Corp., formerly known as Wagner Stott & Clearing Corp., is a wholly-owned subsidiary of MLPF&S is registered as a broker-dealer with the Securities and Exchange Commission and as a futures commission merchant with the Commodity Futures Trading Commission. MLPro provides prime brokerage services such as margin lending, securities financing, and clearing and settlement to broker-dealers, introducing broker-dealers and other professional trading entities on a fully disclosed basis.  MLPF&S is MLPro's Guarantor.

18. William Tirrell is or was an investment advisor of MLPF&S, and from 2004 to April 2016, the Financial and Operations Principal and Head of the Regulatory Reporting Department for MLPF&S, and in that role oversaw regulatory reporting for MLPF&S and MLPro.  He was also the Acting CFO of MLPF&S from August 2014 to April 2016.

### *General Facts Relating to Plaintiff's Claims*

19. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

20. This matter arises from violations of the Customer Protection Rule under Securities Exchange Act Rule 15c3-3. Under this rule, broker-dealers are required to safeguard both the cash and securities of their customers so that

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1    customer assets can be returned if the firm fails.

2    21. The Rule requires a carrying broker-dealer to maintain a reserve of funds

3    and/or certain qualified securities in an account at a bank ("Reserve

4    Account") that is at least equal in value to the net cash owed to customers.

5    17 CFR 240.15C3-3(e).

6    22. These violations occurred in or around 2009 through 2012.

7    23. Plaintiff did not discover these violations until the SEC publically

8    announced in 2016 that Merrill Lynch agreed to pay a civil monetary penalty

9    of $358 million arising out of its undisclosed misuse of customer cash to

10   generate profits for the firm and failed to safeguard securities from the

11   claims of its creditors.  Such fine was ordered to be paid to the Securities

12   and Exchange Commission for transfer to the general fund of the United

13   States Treasury.

14   24. During this time frame, Defendants used cash belongings to its customers,

15   which was supposed to be maintained for the customers in the Reserve

16   Account, to fund Defendants' own business activities through a series of

17   increasingly complex trades. These trades are known as Leveraged

18   Conversion Trades.

19   25. From 2009 to 2012, ML executed a series of trades that reduced the balance

20   of its Reserve Account by billions of dollars and then used those freed-up

21   funds to finance firm inventory and thereby finance its business activities.

22   26. Defendants thus used Leveraged Conversion Trades to reduce the amount of

23   cash it was required to deposit in a customer reserve account that it was

24   required to maintain under Rule 15c3-3(e).  Defendants thus improperly

25   reduced the amount of money required to be maintained in the reserve

26   account, which money was to be maintained in the Reserve Account for the

27   benefit of MLPF&S and MLPro's customers.

28   27. During this time period, Defendant Merrill Lynch made billions of dollars in

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

margin loans to finance riskless trades that lacked defined terms and economic substance, which Defendant created and executed with newly-created counterparty entities.

28. During this time period, Defendant also allowed its own clearing banks to hold liens over securities owned by its customers.

29. Plaintiff did not want to subject his assets to this type of investment risk and was under the impression his cash or surrogates had been kept in their own accounts and would not be used for Defendants' own business purposes and would not be subject to a lien.

30. Plaintiff relied on Defendants' representation that his assets would also be kept segregated from the investment firm's own account, with consumer funds maintained in an omnibus account or what is referred to as a reserve account.[2]

31. Upon information and belief, Defendants did not keep the funds (at least in part) segregated and in turn, used the cash from its customers' accounts, including Plaintiff's account, to trade for Defendants' own treasury accounts.

32. By using customer funds to funds its own business investments and without consent of Plaintiff and Defendants' other customers, Defendants deprived its customers, including Plaintiff, of legal interest to which Plaintiff and Defendants' customers would have been entitled had Defendants obtained the funds through means of authorized loans.

33. MLPF&S and MLPro also deprived their customers of profits made by MLPF&S and MLPro from the unauthorized use of customer funds,

---

[2] The SEC adopted Rule 15c3-3 in 1972, in part, to ensure that a broker-dealer in possession of customers' funds either deployed those funds in safe areas of the broker-dealer's business related to servicing its customers or, if not deployed in such areas, deposited the funds in a reserve bank account to prevent commingling of customer and firm funds.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

specifically the approximately $50 million in profits that MLPF&S and MLPro were ordered to disgorge by the Securities and Exchange Commission for transfer to the general fund of the United States Treasury.

## Predicate Acts Involving Defendants

## Financial Institution Fraud - 18 U.S.C. 1961(1)(B)

34. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

35. From 2009 to 2012, Defendants executed a series of trades that reduced the balance of its Reserve Account by billions of dollars and then used those freed-up funds to finance firm inventory and finance business activities.

36. In 2008, Merrill Lynch sought to reduce the amount of cash it was required to deposit in its Reserve Account that it was supposed to maintain for the benefit of MLPF&S' and MLPCC's customers.

37. MLPF&S's Structured Equity Financing and Trading ("SEFT") desk was responsible for structuring a trade designed to introduce customer debts in the Reserve Formula through soliciting customers to enter into conversion trades that would include margin loans that would decrease the amount Defendants were required to maintain in the Reserve Account.

38. During the development of the trades, the "Leverage Conversion Trades," the SEFT desk consulted with Tirrell, the head of MLPF&S's Regulatory Reporting Department and its FinOp about the potential impact on the Reserve Formula.

39. The SEFT desk's Leverage Conversion Trades were approved by Tirrell in his role as FinOp and the head of MLPF&S's Regulatory Reporting Department.

40. During Tirrell's and SEFT Trader's presentation of the Leveraged Conversion Trades to Financial Industry Regulatory Authority ("FINRA") and the Commission's Division of Trading and Markets ("T&M"), Merrill

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Lynch never informed FINRA and T&M that they were going to be used to finance firm inventory of ML.

41. Shortly after the meeting with regulators, ML began using the Leverage Conversion Trades to finance its own firm inventory.

42. ML agreed to provide details on executed Leveraged Conversion Trades on a monthly basis to the Financial Industry Regulatory Authority. However, Merrill Lynch never provided the information from 2009 through 2012 except for one Focus report in 2009.

43. ML's needs fully dictated the terms of the Leveraged Conversion Trades.

44. In 2010, SEFT Trader solicited former option traders who were not customers of ML to participate in the Leveraged Conversion Trades. SEFT Trader advised the traders to create LLCs to execute Leveraged Conversion Trades from which they would earn a fixed rate of return of up to 15% on the total amount they deposited to capitalize the LLC.

45. SEFT Trader advised the traders to open portfolio margin accounts at MLPF&S in the name of the newly-created LLC and to deposit at least $5 million in cash or securities into the account.

46. For every dollar in cash or securities the newly-created LLC deposited into a portfolio margin account, Merrill Lynch allowed the LCC to purchase up to $100 of securities on margin. The Leveraged Conversion Trades would generate fixed profits sufficient to pay all interest owed in addition to the pre-determined return.

47. SEFT Trader advised the prospective counterparties (the traders) that Merrill Lynch would take the other side of the Leveraged Conversion Trades and were virtually riskless.

48. SEFT Trader made a similar solicitation with an options trading firm which also engaged in a significant number of Leveraged Conversion Trades with Merrill Lynch as the counterparty from 2010 through 2012.

49. The purported customer debits generated by the Leveraged Conversion Trades were tracked in internal reports under the heading, "non-client debt." Internally, Merrill Lynch referred to the net amount a counterparty received from a Leveraged Conversion Trade, not as a profit, but as a fee paid to the counterparty by Merrill Lynch.

50. After an unexpected loss in 2009 resulted in a windfall to one of the LLCs, the SEFT Trader modified the Leveraged Conversion Trades so they had total control over each leg of the trade. By exclusively using firm inventory, Merrill Lynch eliminated any risk related to the acquisition of the underlying stock.

51. To achieve the elimination of any risk, the SET desk used unlisted over-the-counter ("OTC") options. OTC options are bilateral contracts directly between the LLC and Merrill Lynch which eliminate any exposure to the listed option market and the risks that come with it.

52. Because the prices used for OTC options are not reported and are not exposed to the market, Merrill Lynch could depart from the prevailing market price of the securities and reverse engineer prices that yielded the precise "fee" owed to the customer participating in the Trades. Merrill Lynch also drafted the OTC contracts to remove dividend risk. Because these Trades were effectively riskless, Merrill Lynch removed the Leveraged Conversion Trades from its risk monitoring systems.

53. By moving to OTC options, Merrill Lynch diverged from its presentation to regulators that it would only use actively traded stocks.

54. Using OTC options allowed Merrill Lynch to use customer money to finance certain of its less liquid positions.

55. Tirrell emailed FINRA staff in December 2009 and advised them that the options were not a material change to the current arrangement. Despite FINRA having requested a written explanation of the impacts and structure

of the options, Tirrell did not provide the requested information.

56. In January 2010, regulators granted Merrill Lynch's request to expand the size of the Leveraged Conversion Trades as they understood them based on the August 2009 meeting, from $3 billion to $5 billion.

57. In September 2010, the SEFT desk began executing the Leveraged Conversion Trades using OTC options as described above.

58. The OTC Trades lasted from approximately September 2010 through April 2012. During this time range, Merrill Lynch reduced the minimum amount required in its Reserve Account by up to $5 billion per week through Leveraged Conversion Trades. During this period, Merrill Lynch's Reserve Account balance ranged from approximately $7.6 to $12.8 billion.

59. Merrill Lynch put Plaintiff, and its customers, at risk by reducing the customer money it was required to deposit into its Reserve Account by approximately 28% to 40%.

60. By improperly reducing its Reserve Account by up to $5 billion to finance its business activities, Merrill Lynch failed to maintain the required minimum amount in its Reserve Account.

61. By using the client funds in the Reserve Account to finance firm inventory, Merrill Lynch made approximately $50 million in profits through the Leveraged Conversion Trades, which represents the amount the firm saved by using customer money to finance its inventory rather than doing so through other means such as repurchase agreements.

62. As a result, Merrill Lynch's conduct caused Plaintiff to lose out on either lost income due to loaning his assets to Merrill Lynch or lost income or gains he would have made had had subjected his investments to these same risks independently, without Merrill Lynch.

63. At no point during these Trades did Plaintiff know that Merrill Lynch was executing these Leveraged Conversion Trades.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

64. Plaintiff and persons similarly situated did not and could not have discovered with reasonable diligence Defendant's wrongful conduct described above until the SEC made such information publicly known in or around June of 2016.

65. Plaintiff was justified in not bringing the claim earlier based on Defendants' failure to inform Plaintiff and those similarly situated that Defendants were executing the above-mentioned Leveraged Conversion Trades and secretly using customers' funds that should have been maintained in the Reserve Account.

## CAUSES OF ACTION

## CLASS ACTION ALLEGATIONS

66. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

67. Subject to additional information obtained through further investigation and/or discovery, the proposed nationwide class seeking certification of claims for declaratory relief, and for damages pursuant to 18 U.S.C. § 1962(d) for conspiracy to violate 18 U.S.C. § 1962(c), and for violating 18 U.S.C. § 1962(c), consists of:

68. The proposed Class that Plaintiff seeks to represent is defined as follows:

> All persons within the United States who were customers of Defendant/s whose securities and/or cash were invested by Defendant/s and used to trade for Defendant's own accounts from the period January 1, 2009 through December 31, 2012.

69. Plaintiff represents, and is a member of, the Class, as Plaintiff invested his securities with Defendant from the year 2009 through the year 2012.

70. The proposed California only Sub-Class that Plaintiff also seeks to represent is defined as follows:

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

All persons within California who were customers of Defendant/s whose securities and/or cash were invested by Defendant/s and used to trade for Defendant's own accounts from the period January 1, 2009 through December 31, 2012.

71. Plaintiff represents, and is a member of, the Sub-Class, as Plaintiff invested his securities with Defendant from the year 2009 through the year 2012 and resided in California during that time.

72. The Class and Calfiornia Sub-Class are collectively referred to below as the Classes.

73. Plaintiff does not know the number of members in the Classes, but believes the member of the Classes are in the tens of thousands, if not more.   Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

74. Plaintiff and members of the Classes were harmed by the acts of Defendant in at least the following ways:

- Defendants used client deposits to trade their own accounts, resulting in loss of opportunity costs for Plaintiff and the members of the Classes;

- Plaintiff and members of the Classes lost investment returns that would have been recouped if they had invested their securities themselves without the use of Defendant's services;

- Plaintiff and members of the Classes experience lost confidence in terms of not knowing whether their deposits were safe with any firm, including with Defendants; and,

- Plaintiff and members of the Classes lost their legal entitlement to business relations unhampered by schemes prohibited by RICO due

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

to Defendants' conduct.

75. This suit seeks only damages for recovery of economic injury on behalf of the Classes and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand The class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

76. The joinder of the members of the Classes is impractical and the disposition of their claims in the class action will provide substantial benefits both to the parties and to the court, the members of the Classes can be identified through Defendants' business records.

77. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Classes predominate over questions which may affect individual members of the Classes, including, but not limited to, the following:

- Whether, between 2009-2012, Defendant invested a cash belonging to the members of the Classes that was supposed to be maintained in the Reserve Account to fund its own business activities through a series of increasingly complex trades;

- Whether Plaintiff and the Classes were damaged thereby, and the extent of damages for such violation;

- Whether the Defendants are an "enterprise" as defined under 18 U.S.C. § 1961(4);

- Whether the Defendants are engaged in a "pattern of racketeering activity" as defined under 18 U.S.C. § 1961(5);

- Whether Defendants' trading activity with cash from the Reserve Account is a "racketeering activity," as defined under 18 U.S.C. § 1961(1)(B);

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

- Whether the Defendants' racketeering activities were a proximate cause of the injuries to the Plaintiff and the proposed members of the Classes; and

- Whether Plaintiff and proposed members of the Classes are entitled to equitable relief, including but not limited to restitution and/or disgorgement.

78. As a person who was a customer of Defendant/s and whose monetary funds were invested with Defendant/s, Plaintiff is asserting claims that are typical of the Classes. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Classes.

79. Plaintiff and the members of the Classes have all suffered irreparable harm as a result of the Defendants' unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue to withhold interest due to Plaintiff and the members of the Classes.  Because of the small size of the individual Class member's claims, few, if any, members of the Classes could afford to seek legal redress for the wrongs complained of herein.

80. Plaintiff has retained counsel experienced in handling class action claims and claims involving consumer actions.

81. A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendant to comply with federal and California law.  The interest of the Classes in individually controlling the prosecution of separate claims against Defendant is small because the maximum damages in an individual action for violation of the laws alleged herein.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

# FIRST CAUSE OF ACTION

## FRAUD

### (As to all Defendants)

82. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

83. Defendants made the representations contained in the paragraphs above.

84. Said representations and/or omissions were materially false and misleading. At the time Defendants made the representations they knew them to be false and misleading insofar as the customer accounts.

85. In reliance on these representations, Plaintiff continued to keep their investment accounts with Defendants.

86. Plaintiff's reliance on said representations was justified due to the longstanding trust that Plaintiff had placed on Defendants, the continuing oral assurances and written materials that Defendants provided Plaintiff concerning Defendants account policies and procedures, and assurances that Defendants would continue to hold Plaintiff's money in a manner consistent with all written and oral representations, in addition to the legal requirements Defendants were required to follow as it concerns the Reserve Account.

87. As a result of Defendants' conduct, Plaintiff and the members of the Classes have lost a great deal of opportunity cost, interest, other income and/or gains from the windfall to Defendants, as well as loss of confidence in not knowing whether their deposits are safe with any firm in spite of that firm's reassurances.

88. If Plaintiff and members of the Classes had wanted to subject their securities/cash to the company risk or had wanted to trade riskless investments for the riskier type of investments Merrill Lynch made, then they would have likely done so themselves and should be compensated for Merrill Lynch having made these trades against the wishes of Plaintiff and the

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Classes.

89. Upon information and belief, Plaintiff and members of the Classes have lost an excess of several billions of dollars over approximately a four-year period. This amount does not include interest based on the federal margin loan rate of eight percent (the rate by clients if they had borrowed money against their assets to invest) minus the six-month CD interest rate during 2009-2012 as the surrogate for the interest receiving during that time, which averages 0.4 percent in California.

90. Accordingly, by reason of the foregoing alleged acts and conduct of Defendants, Plaintiff and the members of the Classes are entitled to and does seek general, actual and compensatory damages, and disgorgement of ML's ill-gotten profits, all according to proof at trial.

91. Defendants' conduct herein was malicious, oppressive and fraudulent in that Defendants failed to disclose their practice of performing Leveraged Conversion Trades without the knowledge of Plaintiff.

92. In so doing, Defendant knowingly put Plaintiff's and Class members' funds at risk should the members of the Classes have wanted to withdrawal their funds or Defendants' business failed, while assuring them of the integrity of Defendants' practices. Plaintiff and members of the California Class are entitled to recover exemplary and punitive damages under Civil Code Section 3294 in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## NEGLIGENCE
### (As to all Defendants)

93. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

94. Defendants at all times mentioned herein had a duty to act in the best interest of Plaintiff in the manner in which Defendant/s advised Plaintiff with respect

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1  to the investment of their money.

2  95. This duty included the full disclosure of all material facts that would impact
3  the investment decision of Plaintiff.

4  96. Said duty is measured by the standard of custom and practice to registered
5  financial advisors.

6  97. Defendants breached their duty, *inter alia*, by failing to disclose their
7  investment practices, specifically their use of Leveraged Conversion Trades,
8  to Plaintiff and the members of the Classes.

9  98. As a direct and proximate result of Defendants' acts, Plaintiff and members
10  of the Classes have been damaged as alleged in this Complaint.

11  99. As said conduct was carried out by Defendants in an oppressive, malicious,
12  despicable, gross and wantonly negligent manner, said conduct demonstrates
13  Defendants' conscious disregard for the rights and safety of Plaintiff and
14  Class Members' or their families. As such Plaintiff and Members of the
15  California Class are entitled to recover punitive damages from Defendants in
16  an amount according to proof at trial.

**THIRD CAUSE OF ACTION**

**NEGLIGENCE PER SE**

**(As to all Defendants)**

100. Plaintiff re-alleges and incorporates by reference each and every allegation
set forth in the preceding paragraphs.

101. The negligent conduct of Defendants alleged in the Second Cause of Action
constitutes a violation of Federal and California State statutes, as alleged in
this complaint and constitutes negligence per se.

102. Plaintiff and members of the Classes, as investors relying on the investment
advice of Defendants, are members of the California Class of persons
intended to be protected by said statutes.

103. As a direct and proximate result of Defendants' conduct, Plaintiff and

members of the Classes have lost an aggregate sum in excess of 8 billion in earnings, distribution, revenues and profit as a result of Defendants' breaches and misconduct.

104. As a direct and proximate result of Defendants' conduct, Plaintiff and members of the California Class lost their legal entitlement to business relations unhampered by schemes prohibited by RICO.

### FOURTH CAUSE OF ACTION
### STATE SECURITIES FRAUD
### (As to all Defendants)

105. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

106. Defendants, by engaging in the conduct described above, have (a) employed devices, schemes or artifices to defraud Plaintiff; (b) by means of oral and written communications made untrue statements of material fact or omitted to state material facts necessary to make the statements made in light of the circumstances under which the statements were made, not misleading; (c) engaged in transactions, practices or courses of business which operated as a fraud or deceit upon Plaintiff and members of the National Class; and/or (d) misappropriate or convert the funds, security, or property of another person.

107. By engaging in the conduct described above, Defendants have knowingly and substantially violated of the Sections 27200 and 27101, *et seq*. of the California Corporations Code.

### FIFTH CAUSE OF ACTION
### THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT [18 U.S.C. § 1962(c)]
### (As to all Defendants)

108. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

109. Defendants violated the Federal RICO statute and Plaintiff and members of the Classes were injured as a result.

### *Persons*

110. Each Defendant is an entity or natural person capable of holding legal or beneficial interest in property and therefore a "person" within the meaning of 18 U.S.C. § 1961(3).

### *Enterprise*

111. Defendants together form an association-in-fact for the common and continuing purpose described herein and constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in the conduct of their affairs through a continuing pattern of racketeering activity. The members of the enterprise function as a continuing unit with an ascertainable structure separate and distinct from that of the conduct of the pattern of racketeering activity. There may also be other members of the enterprise who are unknown at this time.

112. Defendants are all part of an association-in-fact that jointly works to achieve their common purposes of executing a series of trades using Reserve Account funds and therefore wrongfully financing firm activities.

113. Defendants used an interstate instrumentality by financing riskless trades and implementing those riskless trades, which were executed with newly-created counterparty entities.

### *Pattern of Conduct or Participation*

114. Defendants have repeatedly over a course of extended period of time made trades between 2009-2012 with cash reserves from customers, as described above, which was supposed to stay in the Reserve Account.

115. In fact, each of Defendants has committed or aided and abetted in the commission of thousands of acts of racketeering activity over the last four years. Each act of racketeering activity was related, had a similar purpose,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiff and the similarly situated class members. The multiple acts of racketeering activity which Defendants committed or aided and abetted in the commission of, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of "racketeering activity" as defined in 18 U.S.C. § 1961(5).

### *Racketeering Activities*

### **18 U.S.C. 1961(1)(B)**

### *Financial Institution Fraud*

116. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

117. The Plaintiff and thousands of other similarly situated individuals have justifiably relied upon the fraudulent misrepresentations made by the Defendants with regard to the cash in the Reserve Account.

118. Plaintiff was justified in relying on the Reserve Account because it is required by law, in accordance with 15c3-3(e).

119. But for the Defendants' misrepresentations or omissions regarding the validity of the Reserve Account, the Plaintiff and other similarly situated members of the Class would not have entrusted their funds with Defendants. Defendants unlawfully benefited from the misuse of these funds through their misrepresentations and actions.

120. Therefore, Plaintiff and other similarly situated members of the class have suffered compensable injury proximately caused by the commission of the Defendants' misrepresentations and actions.

### *Injury to Plaintiff in Their Business or Property*

121. Plaintiff and other similarly situated members of the Classes have been injured in their business and property as a direct result of Defendants'

violations of 18 U.S.C. § 1962(c).

122. Plaintiff's injury is in the form of Plaintiff's legal entitlement to business relations unhampered by schemes such as Defendants' conduct related to trades with Plaintiff's cash from the Reserve Account, and lost loan interest to which Plaintiff would have been entitled had Defendants obtained the cash from Plaintiff through means of an authorized loan, and Defendants obtain ill-gotten profits from the Leverage Conversion Trades by using Plaintiff's money without his knowledge and consent.

**SIXTH CAUSE OF ACTION**
**CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) ACT [18 U.S.C. § 1962(d)]**
**(As to all Defendants)**

123. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

124. In violation of 18 U.S.C. 1962(d), the Defendants knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation and management of a RICO enterprise through a pattern of racketeering activity as alleged in the paragraphs above.

125. The conspiracy emerging as early as 2009 and continued through 2012.

126. The purpose of the conspiracy was to finance riskless trades, which profited Defendants unjustly to defraud customers of their cash, which should have been protected in a Reserve Account.

127. Each Defendant committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy included the creation of Leveraged Conversion Trades to reduce the amount of cash which was required to be deposited in the Reserve Account, and structuring and financing riskless trades which were executed with created entities.

128. Defendants colluded with each other to conduct the riskless trades with cash

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

from the Reserve Account.

129. Defendants had no lawful, good faith reason to conduct these trades other than to unjustly enrich themselves via this fraudulent conduct, thus they possessed the specific intent to conduct the trades in order to acquire billions of dollars.

130. Defendants colluded together as part of an enterprise whose purpose is to perpetuate a massive fraud upon thousands of its own customers who are similarly situated to Plaintiff, in order to unjustly enrich the Defendants with millions of dollars that Defendants would not have received payment upon but for said conspiracy to knowingly and fraudulently conducting these riskless Leverage Conversion Trades with its customer cash.

131. Even if one of the Defendants did not agree to harm the Plaintiff specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of Defendants' actions.

132. Plaintiff and other similarly situated members of the Class have been injured and continue to be injured in their business and property by Defendants' conspiracy in violation of 18 U.S.C. § 1962(d).   The unlawful actions of Defendants have directly, illegally, and proximately caused injuries to Plaintiff and other similarly situated individuals in their business or property.

## PRAYER

WHEREFORE, Plaintiff requests judgment as follows against Defendants, and each of them:

- That this action be certified as a class action, Plaintiff be appointed as the representative of the Classes, and Plaintiff's attorneys be appointed Class Counsel for the member of the Classes;
- Judgment in favor against each Defendant for general and

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

compensatory damages in an amount as proven;

- Compensatory damages, for a sum duly trebled, plus interest to the Class pursuant to 18 U.S.C. § 1964(c);

- Attorney's fees, together with all costs and expenses pursuant to 18 U.S.C. § 1964(c);

- Punitive Damages pursuant to the Fraud cause of action;

- Prejudgment interests;

- Attorney's fees pursuant to, *inter alia*, California Corporations Code § 27200;

- Costs of suit incurred herein; and,

- Such other and further relief as is just and proper.

## TRIAL BY JURY

133.    Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.


Dated: February 23, 2017                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: _s/ Abbas Kazerounian_____
          ABBAS KAZEROUNIAN, ESQ.
          AK@KAZLG.COM
          ATTORNEYS FOR PLAINTIFFS

Additional Plaintiffs' Counsel

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626