1   WILMER CUTLER PICKERING
        HALE AND DORR
2   Matthew Martens (NJ:047541998,
    NY:5275631, DC, NC)
3   Timothy Perla (MA: 660447)
    Harriet Hoder (MA: 679416)
4   60 State Street
    Boston, MA 02109 USA
5   Tel: (617) 526-6000
    (*Pro Hac Vice* Applications Pending)
6
    MORGAN, LEWIS & BOCKIUS LLP
7   Brian M. Jazaeri, Bar No. 221144
    Lisa Veasman, Bar No. 259050
8   300 South Grand Avenue
    Twenty-Second Floor
9   Los Angeles, CA  90071-3132
    Tel:   +1.213.612.2500
10
    Attorneys for Defendants Merrill Lynch
11  Pierce, Fenner & Smith, Inc. and Merrill
    Lynch Professional Clearing Corp.
12
    HIGGS FLETCHER & MACK LLP
13  John J. Rice, Bar No. 140865
    401 West A Street, Suite 2600
14  San Diego, CA 92101
    Tel:   +1.619.236.1551
15
    Attorneys for Defendant,
16  William Tirrell

17  [Additional Defense Counsel Identified in
    Signature Blocks]

18                **UNITED STATES DISTRICT COURT**

19             **SOUTHERN DISTRICT OF CALIFORNIA**

20

21  JAMES JIAO, Individually and On           Case No. 3:17-cv-00409-L-MDD
    Behalf of All Others Similarly Situated,
22                                            **MEMORANDUM IN SUPPORT OF**
                            Plaintiffs,        **DEFENDANTS' JOINT MOTION**
23          vs.                                **TO DISMISS**

24  MERRILL LYNCH PIERCE, FENNER              **[FRCP RULE 9(B), 12(B)(1), 12(B)(2),**
    & SMITH, INC.; MERRILL LYNCH              **12(B)(3)12(B)(6)]**
25  PROFESSIONAL CLEARING CORP.;
    WILLIAM TIRRELL, an Individual; and       NO ORAL ARGUMENT UNLESS
26  DOES, 1 through 100,                       REQUESTED BY THE COURT

27                          Defendants.        Date:      June 12, 2017
                                               Judge:     Hon. M. James Lorenz
28                                             Ctrm:      5B (5th Floor-Schwartz)

**<u>MEMORANDUM IN SUPPORT OF</u>**

**<u>DEFENDANTS' JOINT MOTION TO DISMISS</u>**

**Table of Contents**

Page

Introduction ............................................................................................... 1

Background ................................................................................................. 3

     A.    The Parties ................................................................................ 3

     B.    The Leveraged Conversion Trades ........................................ 3

     C.    The SEC Settlement ................................................................ 4

Argument ................................................................................................... 5

I.     This Court Lacks Personal Jurisdiction Over Defendants ............................ 5

     A.    General Jurisdiction Is Lacking .............................................. 5

     B.    Specific Jurisdiction Is Lacking ............................................. 7

     C.    The RICO Statute Does Not Establish Personal Jurisdiction ............... 8

II.    Plaintiff Lacks Constitutional and Statutory Standing .................................. 9

     A.    Plaintiff Fails to Plead a "Lost Opportunity" Injury ............................ 11

     B.    "Lost Confidence" Is Not an Actionable Injury ................................. 13

     C.    Plaintiff Cannot Base Injury On a Purported "Legal Entitlement to Business Relations Unhampered by Schemes" ............................. 13

III.   The Complaint Fails to State a Claim for Relief ........................................... 14

- i -

A.     Plaintiff Fails to Plead Fraud With Particularity (Count I).................15

B.     Plaintiff Fails To State A Claim For Negligence (Count II) .............18

C.     Negligence Per Se Is Not a Cause Of Action (Count III)...................18

D.     Plaintiff's Section 27201 Claim Is Time-Barred (Count IV) ............18

E.     Plaintiff Fails To State A RICO Claim (Count V) ............................19

F.     Plaintiff Fails To State A Claim For RICO Conspiracy (Count VI) .........................................................................................23

IV.   SLUSA Bars Plaintiff's State Law Claims (Counts I-IV) ............................24

Conclusion ......................................................................................................25

DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:17-cv-00409-L-MDD

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Kutak, Rock & Campbell*,
   51 F.3d 518 (5th Cir. 1995) ................................................................. 12

*Angelastro v. Prudential-Bache Sec.*,
   764 F.2d 939 (9th Cir. 1985) ............................................................... 24

*In re Atmel Corp. Derivative Litig.*,
   No. C 06-4592, 2007 WL 2070299 (N.D. Cal. July 16, 2007) ......................... 19

*Barantsevich v. VTB Bank*,
   954 F. Supp. 2d 972 (C.D. Cal. 2013) ................................................... 8, 9

*Bd. of Cty. Comm'rs of San Juan Cty. v. Liberty Grp.*,
   965 F.2d 879 (10th Cir. 1992) .............................................................. 23

*Berg v. First State Ins. Co.*,
   915 F.2d 460 (9th Cir. 1990) ............................................................... 10

*Best Deals on TV, Inc. v. Naveed*,
   No. C 07–1610, 2007 WL 2825652 (N.D. Cal. Sept. 26, 2007) ............ 22, 23, 24

*Black, et al. v. CorVel Enter. Inc., et al.*,
   No. 14-2588, 2016 WL 3457032 (C.D. Cal. Apr. 27, 2016) ............................ 12

*Bressner v. Ambroziak*,
   379 F.3d 478 (7th Cir. 2004) ............................................................... 22

*Bulletin Displays, LLC v. Regency Outdoor Advert., Inc.*,
   518 F. Supp. 2d 1182 (C.D. Cal. 2007) ................................................... 14

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ........................................................................ 7, 8

*Butcher's Union Local No. 498, United Food & Commercial Workers
   v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1986) ......................................... 8

*Cahen v. Toyota Motor Corp.*,
   147 F. Supp. 2d 955 (N.D. Cal. 2015) ...................................................... 6

*Cedric Kushner Promotions, Ltd. v. King*,
   533 U.S. 158 (2001) ...................................................................................... 22

*Cervantes Orchards & Vineyards, LLC v. Deere & Co.*,
   No. 1:14–cv–3125, 2015 WL 4210978 (E.D. Wash. July 10, 2015) ................ 23

*Chadbourne & Park LLP v. Troice*,
   134 S. Ct. 1058 (2014) ................................................................................... 24

*Chaset v. Fleer/Skybox Int'l, LP*,
   300 F.3d 1083 (9th Cir. 2002) ......................................................................... 9

*Chiarella v. United States*,
   445 U.S. 222 (1980) ...................................................................................... 16

*Corcoran v. CVS Health Corp.*,
   15-cv-3504, 2016 WL 948880 (N.D. Cal. Mar. 14, 2016) ................................. 6

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ................................................................................. 5, 6

*David v. Alphin*,
   704 F.3d 327 (4th Cir. 2013) ......................................................................... 10

*DeBlasio v. Merrill Lynch & Co.*,
   No. 07 Civ 318, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ......................... 18

*Doe I v. Reddy*,
   No. C 02–05570, 2003 WL 23893010 (N.D. Cal. Aug. 4, 2003) ..................... 14

*Doe v. Roe*,
   958 F.2d 763 (7th Cir. 1992) ......................................................................... 13

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ........................................................................... 7

*Elofson v. Bivens*,
   No. 15-cv-05761, 2017 WL 566323 (N.D. Cal. Feb. 13, 2017) ......................... 8

*Estate of Gottdiener v. Sater*,
   35 F. Supp. 3d 386 (S.D.N.Y. 2014) .............................................................. 20

*Evans v. City of Chicago*,
   434 F.3d 916 (7th Cir. 2006) ......................................................................... 12

*Fireman's Fund Ins. Co. v. Stites*,
    258 F.3d 1016 (9th Cir. 2001) ............................................................. 9

*First Nationwide Bank v. Gelt Funding Corp.*,
    820 F. Supp. 89 (S.D.N.Y. 1993) ................................................... 10, 11

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*,
    704 F.3d 1110 (9th Cir. 2013) ........................................................... 24

*Henderson v. United Student Aid Funds, Inc.*,
    No. 13-cv-1845, 2015 WL 12658485 (S.D. Cal. Apr. 8, 2015) ........................... 6

*Herrick v. Liberty League Int'l*,
    No. 1:07-cv-936, 2008 WL 2230702 (S.D. Ohio May 28, 2008) ...................... 22

*Hill v. Tangherlini*,
    724 F.3d 965 (7th Cir. 2013) ............................................................. 12

*Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream,
    Inc.*, No. 09–5815, 2010 WL 3619884 (N.D. Cal. Sept. 10, 2010) ................... 23

*In re iPhone Application Litig.*,
    No. 11–MD–02250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........... 11, 12

*Lewis v. Scottrade, Inc.*,
    204 F. Supp. 3d 1064 (E.D. Mo. 2016) ............................................... 25

*Lim v. Charles Schwab & Co.*,
    Nos. 15-cv-02074; 15-cv-02945, 2015 WL 7996475 (N.D. Cal.
    Dec. 7, 2015) ........................................................................... 24, 25

*Loughrin v. United States*,
    134 S. Ct. 2384 (2014) ................................................................... 22

*Lui Ciro, Inc. v. Ciro, Inc.*,
    895 F. Supp. 1365 (D. Haw. 1995) ..................................................... 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ....................................................................... 9

*Magnum v. Archdiocese of Phila.*,
    253 Fed. App'x 224 (3d Cir. 2007) ..................................................... 12

- v -

*Martinez v. Aero Caribbean*,
   764 F.3d 1062 (9th Cir. 2014) ........................................................................ 6

*Mendoza v. Zirkle Fruit Co.*,
   301 F.3d 1163 (9th Cir. 2002) ................................................................... 13, 14

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006) ........................................................................................ 24

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
   651 F.3d 268 (2d Cir. 2011) .......................................................................... 20

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) ......................................................................... 15

*O'Callaghan v. New York Stock Exchange*,
   No. 12 Civ. 7247, 2013 WL 3984887 (S.D.N.Y. Aug. 2, 2013) ............... 20, 21

*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
   972 F.2d 580 (5th Cir. 1992) ......................................................................... 23

*Pavlov v. Bank of New York Co., Inc.*,
   No. 01-7434, 2002 WL 63576 (2d Cir. Jan. 14, 2002) ..................................... 21

*People v. Kinder Morgan Energy P'ship, L.P.*,
   569 F. Supp. 2d 1073 (S.D. Cal. 2008) .......................................................... 18

*Pokemon Company Int'l, Inc. v. Shopify*,
   No. 16-mc-80272, 2017 WL 697520 (N.D. Cal. Feb. 22, 2017) ....................... 7

*Press v. Chem. Inv. Servs. Corp.*,
   166 F.3d 529 (2d Cir. 1999) .......................................................................... 17

*Ray v. Spirit Airlines, Inc.*,
   836 F.3d 1340 (11th Cir. 2016) ..................................................................... 23

*River City Mkts., Inc. v. Fleming Foods W., Inc.*,
   960 F.2d 1458 (9th Cir. 1992) ....................................................................... 22

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994) ............................................................................ 23

*Schmidt v. Fleet Bank*,
   16 F. Supp. 2d 340 (S.D.N.Y. 1998) .............................................................. 21

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .......................................................................... 5, 8

*SEC v. Crowe*,
    No. 2:16–cv–36, 2016 WL 6125401 (E.D. Ohio Oct. 20, 2016) ...................... 25

*SEC v. Seabord Corp.*,
    677 F.2d 1301 (9th Cir. 1982) ........................................................................ 19

*Skurkis v. Montelongo*,
    No. 16-cv-0972, 2016 WL 4719271 (N.D. Cal. Sept. 9, 2016) ......................... 7

*Starfish Inv. Corp. v. Hansen*,
    370 F. Supp. 2d 759 (N.D. Ill. 2005) ............................................................... 22

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .......................................................................... 20

*Swinden v. Vanguard Grp., Inc.*,
    No. C 09–03816, 2009 WL 3415376 (N.D. Cal. Oct. 21, 2009) ...................... 17

*Tesari v. Shearson Lehman Hutton, Inc.*,
    No. CV90–430, 1994 WL 903889 (C.D. Cal. June 29, 1994) .......................... 13

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) ............................................................................... 16

*United States v. Fernandez*,
    388 F.3d 1199 (9th Cir. 2004) ........................................................................ 19

*United States v. Finnerty*,
    533 F.3d 143 (2d. Cir. 2008) .......................................................................... 17

*United States v. Jacobs*,
    117 F.3d 82 (2d Cir. 1997) ............................................................................. 22

*United States v. Laurienti*,
    611 F.3d 530 (9th Cir. 2010) .......................................................................... 17

*United States ex rel. Swoben v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) .................................................................... 15, 16

*In re VeriSign, Inc. Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ........................................................... 19

*Williams v. Yamaha Motor Co., Ltd.*,
   851 F.3d 1015 (9th Cir. 2017) ............................................................... 7

*Zola v. TD Ameritrade, Inc.*,
   172 F. Supp. 3d 1055 (D. Neb. 2016) ................................................... 25

**State Cases**

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*,
   158 Cal. App. 4th 226 (Cal. Ct. App. 2007) ...................................... 15

*Das v. Bank of Am., N.A.*,
   186 Cal. App. 4th 727 (Cal. Ct. App. 2010) ...................................... 18

*Lovejoy v. AT&T Corp.*,
   92 Cal. App. 4th 85 (Cal. Ct. App. 2001) .......................................... 15

*People ex rel. Dept. of Corp. v. SpeeDee Oil Change Sys., Inc.*,
   95 Cal. App. 4th 709 (Cal. Ct. App. 2002) ........................................ 19

*Peterson v. Sec. Settlement Corp.*,
   226 Cal. App. 3d 1445 (Cal. Ct. App. 1991) ..................................... 17

*Quiroz v. Seventh Ave. Center*,
   140 Cal. App. 4th 1256 (Cal. Ct. App. 2006) .................................... 18

**Federal Statutes**

15 U.S.C. § 77v ................................................................................................ 21

15 U.S.C. § 78bb .............................................................................................. 24

18 U.S.C. § 1961 ..................................................................................... 19, 21

18 U.S.C. § 1344 ..................................................................................... 21, 22

18 U.S.C. § 1962 ............................................................................. 19, 23, 24

18 U.S.C. § 1964 ....................................................................................... 9, 20

18 U.S.C. § 1965 ..................................................................................... 5, 8, 9

28 U.S.C. § 1391 ............................................................................................... 9

Private Securities Litigation Reform Act ............................... 2, 19, 20, 21

DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:17-cv-00409-L-MDD

Racketeer Influenced and Corrupt Organizations Act ......................................*passim*

Securities Litigation Uniform Standards Act .......................................................... 2, 24

**State Statutes**

Cal. Civ. Code § 3294................................................................................................ 17

Cal. Corp. Code § 25506 ........................................................................................... 19

Cal. Corp. Code § 31303 ........................................................................................... 19

Cal. Corp. Code § 31304 ........................................................................................... 19

Cal. Corp. Code § 27200 ........................................................................................... 18

Cal. Corp. Code § 27201 ...................................................................................... 18, 19

**Rules**

Fed. R. of Civ. P.  9(b)........................................................................ 1, 2, 14, 15, 18

Fed. R. of Civ. P. 12(b)(1).................................................................................... 1, 9

Fed. R. of Civ. P. 12(b)(2).................................................................................. 1, 5, 9

Fed. R. of Civ. P. 12(b)(3).................................................................................... 1, 9

Fed. R. of Civ. P. 12(b)(6).................................................................................. 1, 14

17 C.F.R. § 240.15c3-3.....................................................................................*passim*

**Other Authorities**

5 Witkin, Summary of Cal. Law Torts § 772 (10th ed. 2005) ................................ 15

9 Witkin, Summary of Cal. Law Torts § 835 (10th ed. 2005) ................................ 18

Defendants respectfully submit this Memorandum of Law in support of their Motion to Dismiss pursuant to Fed. R. Civ. P. 9(b), and 12(b)(1), (2), (3), and (6).

**Introduction**

In this putative class action, an opportunistic Plaintiff attempts to capitalize on a 2016 regulatory settlement among Merrill Lynch Pierce, Fenner & Smith, Inc. ("MLPF&S"), Merrill Lynch Professional Clearing Corp. ("MLPro"),[1] (collectively, "Merrill Lynch") and the Securities and Exchange Commission ("SEC") concerning SEC Rule 15c3-3. Rule 15c3-3 requires broker dealers to maintain a Reserve Account containing assets in an amount at least equal to the net cash owed to customers, to protect customers in the event that a broker dealer fails. 17 C.F.R. § 240.15c3-3(e). The SEC criticized Merrill Lynch for engaging in trades that had the effect of reducing the necessary balance of the Reserve Account. However, Merrill Lynch never failed, and the SEC itself stated that "***no customers were harmed***" by the trading. *See* Compl., Ex. A, Merrill Lynch, Pierce, Fenner & Smith Inc. and Merrill Lynch Professional Clearing Corp., Release No. 78141, at ¶ 50 (Jun. 23, 2016) (hereinafter "SEC Rel.") (emphasis added).

Notwithstanding the lack of harm, and that the SEC has already fully addressed any regulatory violation, Plaintiff now seeks to maintain class claims for fraud, negligence, negligence per se, state securities fraud, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). His core theory is that the securities trading at issue in the regulatory settlement, which never involved any assets being removed from any customer account, and only diminished the amount held in Merrill Lynch's own Reserve Account, constituted a fraud against customers. The Court should dismiss the Complaint.

---

[1] MLPro is a subsidiary of MLPF&S. Except where differentiation matters, this Memorandum refers to both entities as "Merrill Lynch".

*First,* this Court does not have personal jurisdiction over any Defendant. There is no general personal jurisdiction under the Supreme Court's *Daimler* case because no Defendant is at home in the Southern District of California—MLPF&S and MLPro are based in New York, and Mr. Tirrell is a New Jersey resident. There is no specific personal jurisdiction because the conduct at issue—trading in a manner that reduced Reserve Account balances—did not occur in this District.

*Second,* Plaintiff lacks constitutional and statutory standing because there is no injury.  As the SEC itself acknowledged, the trading at issue did not harm any customers.  It is thus unsurprising that the Complaint pleads only vague, speculative purported injuries that are not cognizable.

*Third,* Plaintiff has failed to plead his fraud and negligence claims with the specificity required by Rule 9(b).  Both claims are based on alleged misrepresentations and omissions.  However, the Complaint fails to identify a single misrepresentation or omission, and fails to establish a duty to support an omission claim.

*Fourth,* Plaintiff's negligence per se claim fails because that is an evidentiary presumption, not a separate cause of action.

*Fifth,* Plaintiff's state securities fraud claim is barred by the statute's non-tollable two-year limitations period, which expired at the end of 2014.

*Sixth,* Plaintiff's RICO claims fail because: (i) the Private Securities Litigation Reform Act bars RICO claims predicated on securities violations; (ii) Plaintiff fails to plead the requisite predicate statutory violation; and (iii) Plaintiff has not sufficiently pleaded that the Defendants formed an enterprise.

*Finally,* the Securities Litigation Uniform Standards Act preempts Plaintiff's state law claims, because they arise from allegations of fraud in connection with the purchase or sale of covered securities.

Accordingly, the Court should dismiss the Complaint with prejudice.

1

**Background**

2   **A.    The Parties**

3          According to the Complaint and the SEC Release, Defendant MLPF&S is a

4   broker-dealer organized under the laws of Delaware.  Compl. ¶¶ 7, 16.  It is

5   headquartered in New York.  SEC Rel. at 3.  The Complaint alleges that MLPF&S

6   "does business throughout California," but offers no specifics.  Compl. ¶ 7.

7          Defendant MLPro is a subsidiary of MLPF&S, and is a broker dealer.  *Id.* at

8   ¶¶ 8, 17.  It is headquartered in New York.  SEC Rel. at ¶ 1; Compl. ¶ 8.  The

9   Complaint does not allege that MLPro conducts any business in the Southern

10  District of California.

11         Defendant William Tirrell is an associated person of MLPF&S.  He served

12  as Head of the Regulatory Reporting Department from approximately 2004 until

13  April 2016, and interim CFO from April 2014 through April 2016.  SEC Rel. at ¶

14  4.  He is a resident of New Jersey and worked in New York.  SEC Rel. at ¶ 4.

15         Plaintiff is a former employee of MLPF&S[2] and alleges that he was a

16  customer of Merrill Lynch from January 1, 2009 through December 31, 2012.

17  Compl. ¶ 12.  He resides in San Diego.  *Id.* at ¶¶ 6, 12.

18  **B.    The Leveraged Conversion Trades**

19         SEC Rule 15c3-3 requires broker-dealers to maintain a Reserve Account

20  holding assets at least equal in value to the net cash owed to customers, so that

21  customers can quickly be made whole if the broker-dealer fails.  17 C.F.R. §

22  240.15c3-3; SEC Rel. at ¶ 6.  The Reserve Account is an account established and

23  held by the broker dealer, holding its own assets, and does not contain customer

24  _____

25  [2] Merrill Lynch terminated Plaintiff as part of a reduction in force.  In exchange for severance benefits, he signed a general release of claims "under any possible legal,

26  equitable, contract, tort, or statutory theory."  At the appropriate time, Merrill Lynch plans to challenge Plaintiff's ability to bring claims against Merrill Lynch.

27  This release also creates unique circumstances for Plaintiff that undermine his

28  ability to serve as a class representative.

assets. *See* Rule 15c3-3(c). A complex calculation set forth in Rule 15c3-3 determines the reserve amount. Broadly speaking, the formula sums the customer credit that a firm owes to customers (*e.g.,* cash in brokerage accounts), and then subtracts customer debits owed by customers (*e.g.*, margin loan balances).

Between 2009-2012, Merrill Lynch executed a series of trades, termed "Leveraged Conversion Trades," that reduced the amount that Merrill Lynch was required to hold in its Reserve Account. Compl. ¶¶ 25-33; SEC Rel. at ¶ 14. Although the precise details of the trades are not relevant here (and are fully spelled out in the SEC Release), the general structure was as follows. Merrill Lynch would provide a margin loan to a customer who was willing to transact with Merrill Lynch; the customer in turn would use the proceeds to purchase securities from Merrill Lynch's inventory, together with put and call options on those securities. SEC Rel. at ¶¶ 18-20. The existence of the margin loan (which represented a sum owed to Merrill Lynch) reduced the balance that Merrill Lynch was required to maintain in the Reserve Account. *Id.* at ¶ 16.

The Leveraged Conversion Trades never involved transactions in customer accounts (other than for the limited number of customers who agreed to participate as counterparties, as described above). *See id.* at ¶ 32. Accordingly, Plaintiff does not allege that any cash or securities were ever removed from his brokerage account. Nor does he allege that his account lost any value as a result of the trades.

## C. The SEC Settlement

Before Merrill Lynch began making the Leveraged Conversion Trades, it approached the Financial Industry Regulatory Authority ("FINRA") to explain the proposed trades and obtain approval, which was granted. *Id.* at ¶¶ 24-25. However, over time the methodology for making the trades changed in an effort to eliminate risk.[3] Merrill Lynch never obtained updated approval from FINRA. *Id.*

---

[3] Merrill Lynch began to trade over the counter securities (rather than exchange securities) to guarantee that it could take the other side of all trades with the

at ¶¶ 43-44.  The SEC determined that the modified trading mechanics caused the trades to violate Rule 15c3-3.

The SEC investigated, and Merrill Lynch cooperated fully.  *Id.* at ¶ 75.  On June 23, 2016, Merrill Lynch agreed to pay the SEC a penalty of $358 million and disgorgement of $50 million for several violations, including violations of Rule 15c3-3.  *Id.* at 21-23.  In its release announcing the settlement, the SEC noted that the Leveraged Conversion Trades created the potential for customer loss in the event Merrill Lynch failed, but found that no customers were harmed by the violations.  *Id.* at ¶ 50.

Nonetheless, seeking to profit from the SEC Settlement, Plaintiff filed this lawsuit on February 28, 2017.  Notwithstanding the lack of activity in his account, and the lack of any customer harm, he asserts that a violation of Rule 15c3-3 violates RICO and state law.

**Argument**

**I.    This Court Lacks Personal Jurisdiction Over Defendants**

The Court should dismiss the Complaint because this Court lacks personal jurisdiction over the Defendants.  *See* Fed. R. of Civ. P. 12(b)(2).  Plaintiffs have the burden of demonstrating that the Court's exercise of jurisdiction is proper. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Complaint must "make a prima facie showing of jurisdictional facts."  *Id.* Here, however, the Complaint does not allege a basis for general or specific personal jurisdiction, and does not satisfy the requirements to invoke RICO jurisdiction under 18 U.S.C. § 1965.

**A.    General Jurisdiction Is Lacking**

The Supreme Court in *Daimler AG v. Bauman* recently announced that general jurisdiction over a corporation is appropriate only when the corporation's

sophisticated customer, and thereby eliminate risk that a market participant could take the other side of the trade.  SEC Rel. ¶¶ 40-41.

contacts in the forum state "are so constant and pervasive as to render it essentially at home" in the state.  134 S. Ct. 746, 751 (2014) (quotations omitted).  The Supreme Court explained that the "paradigm" for general jurisdiction is a corporation's place of incorporation and principal place of business.  *Id.* at 760.  The Court thus held that a German corporation was not subject to general jurisdiction in California based on the California contacts of its subsidiary, even though its subsidiary had multiple facilities in California and was the largest supplier of luxury vehicles to the California market.  *Id.* at 762.

Under *Daimler* and its progeny, Defendants are not subject to the general jurisdiction of this Court.  MLPF&S is incorporated in Delaware and has its principal place of business in New York.  Compl. ¶ 7; SEC Rel. at 3.  Plaintiff's allegation that MLPF&S "does business throughout California" is fatally vague, and cannot establish general jurisdiction.  *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (no general jurisdiction over defendant who had contracts with California companies worth between $225 and $450 million, sent employees to California, and advertised in trade publications with distribution in California); *Corcoran v. CVS Health Corp.*, 2016 WL 948880, at *5 (N.D. Cal. Mar. 14, 2016) (no general jurisdiction where plaintiffs contended that CVS Health had a substantial number of pharmacies, maintained two distributions centers and solicited employees in California); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 2d 955, 963-65 (N.D. Cal. 2015) (no general jurisdiction with respect to defendant car manufacturer who had 302 employees in California and over one hundred thousand cars registered in California in the past year); *Henderson v. United Student Aid Funds, Inc.*, 2015 WL 12658485, at *2-3 (S.D. Cal. Apr. 8, 2015) (corporation not considered "at home" in California, even though it had "two offices, over 300 employees, [was] licensed to do business in California, pa[id] taxes in California, derive[d] 5.8% of its annual revenue from California, and [was] named as a defendant in various civil actions in California").

This Court also lacks general jurisdiction over MLPro, which is headquartered in New York.  The Complaint does not allege that MLPro has *any* contacts with the Southern District of California, much less pervasive contacts. The fact that MLPro is a subsidiary of MLPF&S does not establish personal jurisdiction either (even assuming that personal jurisdiction over MLPF&S itself were proper).  *See Williams v. Yamaha Motor Co., Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017) ("[T]he parent-subsidiary relationship does not on its own establish two entities as 'alter egos,' and thus does not indicate that general jurisdiction over one gives rise to general jurisdiction over the other."); *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (no jurisdiction over subsidiary even though parent monitored subsidiary's performance, supervised subsidiary's finance and capital budget decisions, and articulated general policies and procedures); *Pokemon Company Int'l, Inc. v. Shopify*, 2017 WL 697520 at *4 (N.D. Cal. Feb. 22, 2017) (no jurisdiction over one of two related entities even though they employed the same privacy policy, shared principal officers and executives, and presented themselves as integrated on their website); *Skurkis v. Montelongo*, 2016 WL 4719271 at *4 (N.D. Cal. Sept. 9, 2016) (no jurisdiction over subsidiary even though the parent company presented subsidiaries as one integrated company on its website, the parent had full ownership over subsidiary, and parent and subsidiary shared the same officers).

Finally, the Complaint does not establish a basis for general jurisdiction over Mr. Tirrell.  The Complaint contains no allegations whatsoever that he has any contacts with California.

### B.    Specific Jurisdiction Is Lacking

A court may exercise specific jurisdiction where the suit "arises out of" or is related to the defendant's contacts with the forum and the defendant "purposefully avails itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v.*

*Denckla*, 357 U.S. 235, 253 (1958)); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (Ninth Circuit employs a three-part test: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.").

Here, the Complaint does not allege that *any* conduct occurred in or was directed at California. Further, a review of the SEC Release makes clear that the Leveraged Conversion Trading at the center of the Complaint took place in MLPF&S's or MLPro's offices, which are based in New York.

Thus, there is no basis for specific personal jurisdiction.

## C. The RICO Statute Does Not Establish Personal Jurisdiction

Finally, RICO contains a section that can broaden personal jurisdiction, but it does not apply here. Specifically, 18 U.S.C. § 1965 provides that where "the ends of justice require," a plaintiff may sue in "any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a), (b). However, controlling law holds that, in order to invoke this provision:

> [T]he court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators.

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986); *Elofson v. Bivens*, 2017 WL 566323, at *6 (N.D. Cal. Feb. 13, 2017) ("ends of justice" provision did not apply because another district had personal jurisdiction over all defendants); *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 989 (C.D. Cal. 2013).

- 8 -

1    Here, the requirements are not met because, as detailed above, this Court

2 does not have personal jurisdiction over any Defendant based on minimum

3 contacts.  Further, the Complaint does not establish that there is no other district

4 that could exercise personal jurisdiction over all Defendants.  In fact, the Southern

5 District of New York would have personal jurisdiction over all Defendants.

6    Accordingly, the Court lacks personal jurisdiction over the Defendants, and

7 the Court should dismiss the Complaint under Rule 12(b)(2).[4]

8 **II.    Plaintiff Lacks Constitutional and Statutory Standing**

9    The Court should also dismiss the Complaint pursuant to Rule 12(b)(1)

10 because Plaintiff has failed to plead an injury sufficient to establish constitutional

11 or statutory standing.  Constitutional standing requires Plaintiff to plead (1) an

12 injury-in-fact that is "concrete and particularized" and "actual or imminent", (2)

13 causation, and (3) that it is "likely, as opposed to merely speculative, that the injury

14 will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504

15 U.S. 555, 560-61 (1992) (citations omitted).

16    Plaintiff must also establish statutory standing.  In the case of RICO,

17 Plaintiff must allege he was "injured in his business or property by reason of a

18 violation of" RICO.  18 U.S.C. § 1964(c).  "First, a civil RICO plaintiff must show

19 that his injury was proximately caused by the [prohibited] conduct.  Second, the

20 plaintiff must show that he has suffered a concrete financial loss."  *Fireman's*

21 *Fund Ins. Co. v. Stites*, 258 F.3d 1016, 1021 (9th Cir. 2001) (citation omitted).  It is

22 not sufficient to show personal injury or "mere injury to a valuable intangible

23 property interest."  *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086-87 (9th

24 Cir. 2002).

25

26

27

28

---

[4] The lack of personal jurisdiction also renders venue improper under Rule 12(b)(3).  Both 28 U.S.C. § 1391 and 18 U.S.C. §1965(a) require that a Defendant be subject to personal jurisdiction in this District.

DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:17-cv-00409-L-MDD

Here, Plaintiff cannot satisfy either the constitutional or RICO standing requirements. Plaintiff does not allege that the Leveraged Conversion Trades caused him to lose *any* business or property, *i.e.,* no "concrete financial loss." He does not allege that Defendants ever removed any cash or securities from his account, or that the account ever lost any value due to the Leveraged Conversion Trades. Nor could he because, as detailed above, the Leveraged Conversion Trades involved trading of Merrill Lynch's *own* securities inventory, and the impact was in Merrill Lynch's Reserve Account. Thus, Plaintiff does not claim—and could not claim—that he is in a different position today then he would be had the Leveraged Conversion Trades never occurred. *Accord* SEC Rel. at 14 (stating that "no customers were harmed").

Further, even if the Leveraged Conversion Trades created a possibility of customer loss in the event Merrill Lynch failed, at most that constitutes a risk of a loss that never came to pass (because Merrill Lynch never failed). Unrealized, speculative risk does not constitute injury. *See David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013) ("We find these risk-based theories of standing unpersuasive, not least because they rest on a highly speculative foundation lacking any discernible limiting principle."); *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (insurer's cancellation of companies' liability policies resulting in "potential financial loss in the future" did not constitute injury compensable under RICO because directors had incurred no actual expenses as a result of the cancellation and the risk of future financial loss was a personal injury that does not fall within the concrete financial loss required by RICO); *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F. Supp. 1365, 1378 (D. Haw. 1995) (plaintiffs, who alleged they were fraudulently induced into guaranteeing loans, had not pleaded a "present or concrete financial loss" because they had not alleged that "creditors ha[d] foreclosed on the notes or begun proceedings against the [plaintiffs] as makers or guarantors"); *First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 92 (S.D.N.Y. 1993),

- 10 -

1  *aff'd*, 27 F.3d 763 (2d Cir. 1994) (plaintiff, a mortgagee suing over

2  misrepresentations in the issuance of loans, had not pleaded injury under RICO

3  with respect to loans not in default).

4       Thus, Plaintiff has not alleged injury.  And, none of the Complaint's three

5  theories of injury can alter that conclusion.  *See* Compl. ¶ 74 (listing purported

6  injuries generally) and ¶ 122 (listing purported RICO injuries).

7       **A.    Plaintiff Fails to Plead a "Lost Opportunity" Injury**

8       Plaintiff first alleges that he suffered injury in the form of a "loss of

9  opportunity" to obtain "loan interest" and/or "investment returns" that he allegedly

10 could have obtained had he invested money, or granted Merrill Lynch a loan.

11 Compl. ¶¶ 74 (first two bullets), ¶ 122; *see also* ¶¶ 32, 62, 87.

12      This theory of injury makes no sense, however, because, as detailed above,

13 there is no allegation that the Leveraged Conversion Trading diminished the

14 holdings or value of Plaintiff's brokerage account.  Thus, if Plaintiff wanted to

15 invest his funds, or loan them, nothing about the Leveraged Conversion Trades

16 impacted his ability to do so.  In that regard, Plaintiff mischaracterizes the

17 Leveraged Conversion Trades by casting them as a "loan" of assets to Merrill

18 Lynch (Compl. ¶ 62)—there is no allegation that anything was ever removed from

19 (or loaned out of) his account.  Instead, as detailed above, the mechanics were that

20 Merrill Lynch would loan *its own* funds (via margin loan), a sophisticated

21 customer would purchase securities from *Merrill Lynch* inventory, and Merrill

22 Lynch would reduce the balance in *its own* Reserve Account.  No part of the

23 process involves any cash or securities deposited by Plaintiff.  And no part of the

24 process deprived Plaintiff of the ability to make any investment or loan.

25      Regardless, assertions about "lost opportunity"—absent specific allegations

26 of exactly what opportunity was lost, how Plaintiff could and would have taken

27 advantage of it, and the calculable financial loss—are impermissibly speculative.

28 *See In re iPhone Application Litig.*, 2011 WL 4403963, at *5-6 (N.D. Cal. Sept.

- 11 -

20, 2011) (holding that plaintiffs' mere "general allegations" about "lost opportunity costs" were insufficient to establish a concrete theory of injury for Article III standing). For example, in *Anderson v. Kutak, Rock & Campbell*, class action plaintiffs alleged that defendant's fraudulent conduct depleted funds for state-issued low interest agricultural loans, making the loans less available to farmers. 51 F.3d 518, 522 (5th Cir. 1995). The lead plaintiff contended that he had lost his legal entitlement to participate in a non-fraudulent loan program. Like in this case, however, the lead plaintiff had not shown that he was eligible for such loans or alleged that he had "ever lost any money as a result of the RICO scheme." *Id.* at 522-23. The court concluded that, "[a]t best, Anderson's suit shows only a lost opportunity to obtain a NIFA loan. Such lost opportunity by itself does not constitute an injury that confers standing to bring a RICO cause of action." *Id.* at 523. Moreover, even if plaintiff had shown he "was eligible [for a loan] and had shown how the opportunity to borrow at a low interest rate would have benefited him," there was no standing because the alleged injury was "speculative and d[id] not show a conclusive financial loss." *Id.*; *see also Magnum v. Archdiocese of Phila.*, 253 Fed. App'x 224, 229 (3d Cir. 2007) (lost opportunity to bring tort claims did not constitute "injury to business or property"); *Evans v. City of Chicago*, 434 F.3d 916, 926-31 (7th Cir. 2006), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013) ("[F]oregone earnings stemming from the lost opportunity to seek or gain employment are . . . insufficient to satisfy [RICO's] injury to 'business or property' requirement where they constitute nothing more than pecuniary losses flowing from what is, at base, a personal injury."). Thus, Plaintiff cannot establish injury based on "lost opportunity."[5]

---

[5] In addition, Plaintiff has failed to plead a vested interest in any property. *See Black, et al. v. CorVel Enter. Inc., et al.*, 2016 WL 3457032, at *11 (C.D. Cal. Apr. 27, 2016).

DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:17-cv-00409-L-MDD

### B.   "Lost Confidence" Is Not an Actionable Injury

Next, Plaintiff alleges that he "lost confidence in terms of not knowing whether their deposits were safe with any firm, including with Defendants." Compl. ¶ 74 (third bullet).  This, at most, is a vague allegation of a non-economic injury that does not suffice under RICO,[6] and is not redressable by this Court.  *See Tesari v. Shearson Lehman Hutton, Inc.*, 1994 WL 903889, at *2 (C.D. Cal. June 29, 1994), *aff'd* 82 F.3d 423 (9th Cir. 1996) ("Without any economic loss, there is simply no support in the California authorities for awarding damages for non-economic injury, e.g. mental distress, or for awarding punitive damages.").

### C.   Plaintiff Cannot Base Injury On a Purported "Legal Entitlement to Business Relations Unhampered by Schemes"

Finally, Plaintiff alleges that he suffered an injury to his "legal entitlement to business relations unhampered by schemes…."  Compl. ¶ 74 (fourth bullet), ¶ 122. Plaintiff appears to be seeking to assert an injury described in *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 n.4 (9th Cir. 2002), which exists under circumstances not present here.  There, day laborers alleged that their employers had depressed their wages by illegally hiring undocumented workers at below-market wages.  *Id.* at 1166.  The Ninth Circuit held that plaintiffs had standing under RICO based on their alleged property interest in the "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes."  *Id.* at 1168-72.

This concept does not apply here, however.  In each case applying this theory, plaintiffs pointed to an actual, concrete business or financial opportunity

---

Plaintiff also complains about Defendants' "ill-gotten profits."  Compl. ¶122. This facially does not describe an injury to Plaintiff.  Regardless, Plaintiff has no property interest in Merrill Lynch profits.

[6] As explained above, RICO requires concrete pecuniary loss.  Lost confidence is not actionable under RICO.  *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992) (stating that "mental anguish, and pain and suffering" are not recoverable under RICO).

1   that would have existed but for defendant's conduct.  *See, e.g.*, *id.* at 1166 (hiring

2   of undocumented workers at below-market wages had depressed plaintiffs' wages);

3   *Bulletin Displays, LLC v. Regency Outdoor Advert., Inc.*, 518 F. Supp. 2d 1182,

4   1191 (C.D. Cal. 2007) (being shut out of bidding process for billboard advertising

5   contracts constituted an actionable injury under RICO); *Doe I v. Reddy*, 2003 WL

6   23893010, at *2 (N.D. Cal. Aug. 4, 2003) (holding that RICO injury was

7   established where plaintiffs claimed defendants fraudulently induced them to come

8   to the United States, then forced them to work for pay below minimum wage).

9       In contrast, here, Plaintiff has not alleged any financial loss resulting from

10   the loss of a property interest or business opportunity.  He has not alleged that he

11   sought to engage in business relations and was prevented from doing so.  There is

12   no allegation that, but for Merrill Lynch's conduct, Plaintiff would have made a

13   loan or investment and was prevented from doing so.  Nor has Plaintiff alleged that

14   he tried to withdraw money from his Merrill Lynch account and was denied the

15   opportunity.  Instead, by any fair reading of the Complaint, Plaintiff is in the exact

16   same position today as he would have been had Merrill Lynch never engaged in

17   the Leveraged Conversion Trades.

18       Accordingly, Plaintiff has not established injury, and therefore lacks

19   constitutional and statutory standing.[7]

20   **III.   The Complaint Fails to State a Claim for Relief**

21       The Court should also dismiss each claim of the Complaint under Rules

22   12(b)(6) and 9(b).[8]

23

24

25   [7] Alternatively, all of Plaintiff's claims could be dismissed under Rule 12(b)(6) for failure to adequately plead injury or damages.

26   [8] "In alleging fraud or mistake, a party must state with particularity the

27   circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Because Plaintiff has based his claims on allegedly fraudulent conduct, he must plead his

28   claims with particularity.  *Id.*

### A.    Plaintiff Fails to Plead Fraud With Particularity (Count I)

In order to sustain a cause of action for fraud, Plaintiff must plead (1) a misrepresentation or omission that defendant had a duty to disclose; (2) defendant's knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages.  5 Witkin, Summary of Cal. Law Torts § 772 (10th ed. 2005); *see also Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 240 (Cal. Ct. App. 2007).  Under Rule 9(b), Plaintiff "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This means the plaintiff must allege "the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false."  *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citations omitted).  Accordingly, "mere conclusory allegations of fraud are insufficient."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citations omitted).

Here, Plaintiff fails to plead any of the detail required by Rule 9(b).  As an initial matter, the Complaint contains no allegations that Defendants acted with an intent to defraud Plaintiff or other customers.  California law requires a showing of both (a) intent to induce reliance and(b) that reliance is reasonably expected.  *See Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 92-93 (Cal. Ct. App. 2001).  Plaintiff alleges that, "[a]t the time Defendants made the representations they knew them to be false and misleading insofar as the customer accounts."  Compl. ¶ 84.  That allegation (in addition to being vague) at most speaks to the knowledge of falsity element, however, and does not allege intent to defraud or reasonable expectation of reliance.

Moreover, the Complaint contains no particulars of any misstatement directed at Plaintiff.  Plaintiff alleges that he "was under the impression his cash or surrogates had been kept in their own accounts" and "relied on Defendants' representation that his assets would also be kept segregated from the investment

- 15 -

1    firm's own account…." *Id.* at ¶¶ 29, 30.  Plaintiff also points to "the continuing

2    oral assurances and written materials that Defendants provided Plaintiff concerning

3    Defendants account policies and procedures…." *Id.* at ¶ 86.  These are, however,

4    vague statements that do not supply Defendants with notice of what was said, by

5    whom, when, or why it was false.  *See United Healthcare*, 848 F.3d at 1180

6    ("Broad allegations that include no particularized supporting detail do not

7    suffice").  Nowhere does the Complaint, for instance, allege that Defendants made

8    any statements to him about Reserve Accounts, Leveraged Conversion Trades,

9    Rule 15c3-3 compliance, or about other matters addressed in the SEC Settlement.

10   The Complaint does not allege that Defendant Tirrell communicated with Plaintiff

11   or other class members at all.

12        In any event, statements that Plaintiff refers to would not be rendered false

13   by the existence of the Leveraged Conversion Trades.  Even if, for instance,

14   Defendants made some (unpleaded and unidentified) statement that gave Plaintiff

15   the "impression his cash or surrogates had been kept in their own accounts," that

16   would not be rendered false by the existence of the Leveraged Conversion Trades.

17   Plaintiff does not allege that cash or securities were ever removed from, or not held

18   in, his account.  The Leveraged Conversion Trades involve Merrill Lynch loaning

19   *its* cash to customers, who purchase *its securities*, and thereby reducing the balance

20   in Merrill Lynch's own Reserve Account.  Plaintiff's account is uninvolved.

21        Next, while the Complaint is unclear regarding whether Plaintiff is pursuing

22   an omission theory of fraud and what the omission would be,[9] such a theory would

23   fail.  An omission is actionable only when defendant is subject to a duty to disclose

24   omitted facts.  *Chiarella v. United States*, 445 U.S. 222, 228 (1980); *In re Time

25   Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993).  The Complaint fails to

26   allege what duty Defendants owed to its customers to supply information about the

27   ────────────────

[9] The Complaint refers to alleged "representations and/or omissions," but does not

28   explain the nature of any alleged omissions.  Compl. ¶ 84.

Leveraged Conversion Trades (assuming that is the allegedly omitted information). A broker-dealer acquires a duty to disclose material information only if it acts as a fiduciary. *See United States v. Laurienti*, 611 F.3d 530, 539-41 (9th Cir. 2010). A broker "is a fiduciary only when it actually provides investment advice and has the authority to make trades on the client's behalf." *Swinden v. Vanguard Grp., Inc.*, 2009 WL 3415376, at *6 (N.D. Cal. Oct. 21, 2009) (holding that allegations that defendant is an investment company and plaintiff placed funds with defendant is "insufficient to plead the existence of a fiduciary relationship"); *see also Peterson v. Sec. Settlement Corp.,* 226 Cal. App. 3d 1445, 1455-57 (Cal. Ct. App. 1991) (broker's duties are limited when it does not provide investment advice). Otherwise, the relationship between a securities broker and a customer is one of creditor-debtor. *See Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 536 (2d Cir. 1999) ("[I]n the context of an ordinary broker-client relationship, the broker owes no fiduciary duty to the purchaser of the security."). Here, Plaintiff makes no allegations to support the existence of any fiduciary duty.

Finally, the bare allegation that Defendants violated Rule 15c3-3 cannot sustain a fraud claim. *United States v. Finnerty*, 533 F.3d 143, 151 (2d. Cir. 2008) ("violation of an [SEC] rule does not establish securities fraud in the civil context"). For conduct potentially to become actionable, plaintiff must show that defendant made an affirmative representation to plaintiff that it would comply with applicable securities regulations. *Id.* at 149-50. There is no such allegation here.

Accordingly, the Court should dismiss Plaintiff's claim for fraud.[10]

---

[10] The Court should also strike from the Complaint Plaintiff's prayer for punitive damages. Punitive damages are only available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice," and the alleged fraud was committed with the intention to deprive Plaintiff of property or legal rights. Cal. Civ. Code § 3294. The Complaint is devoid of any allegation that Defendants intended to deprive Plaintiff of property.

### B.      Plaintiff Fails To State A Claim For Negligence (Count II)

Plaintiffs' negligence claim is based on a theory that Defendants "fail[ed] to disclose their investment practices, specifically their use of Leveraged Conversion Trades, to Plaintiff…."  Compl. ¶ 97.  This theory fails for the same reasons that the omission-based fraud claim fails, *i.e.*, lack of duty of disclosure.  *See supra* § III.A.[11]  In the absence of duty, Plaintiff may not sustain a negligence claim.  9 Witkin, Summary of Cal. Law Torts § 835 (10th ed. 2005).

### C.      Negligence Per Se Is Not a Cause Of Action (Count III)

Count III fails to state a claim because negligence per se is not an independent cause of action.  *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 737 (Cal. Ct. App. 2010); *see Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (Cal. Ct. App. 2006) ("The doctrine [of negligence per se] does not provide a private right of action for violation of a statute").  Rather, negligence per se is an evidentiary presumption to be applied to a negligence claim.  *Das*, 186 Cal. App. 4th at 737-38.  This, without more, disposes of the claim.  *People v. Kinder Morgan Energy P'ship, L.P.*, 569 F. Supp. 2d 1073, 1087 (S.D. Cal. 2008) (dismissing standalone negligence per se cause of action); *Quiroz*, 140 Cal. App. 4th at 1286 (affirming dismissal of negligence per se cause of action).

### D.      Plaintiff's Section 27201 Claim Is Time-Barred (Count IV)

California Corporations Code § 27201 states that actions under California Corporations Code section 27200 must be "brought before the expiration of two years after the violation upon which it is based *or* the expiration of one year after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire." (emphasis added).  The two-year limitation period accrues when the

---

[11] Rule 9(b) applies to the negligence claim because it is based on the same allegations as the fraud claim.  *DeBlasio v. Merrill Lynch & Co.*, 2009 WL 2242605 (S.D.N.Y. July 27, 2009) (subjecting negligence claim to Rule 9(b) because it was "based on the same allegations of intentional misrepresentations and omissions by Defendants").

alleged violation occurs, regardless of when the plaintiff discovered the violation. *See People ex rel. Dept. of Corp. v. SpeeDee Oil Change Sys., Inc.*, 95 Cal. App. 4th 709, 724 (Cal. Ct. App. 2002).  California case law interpreting similar language in other statutes indicates that this limitation may not be tolled.  *See SEC v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982) (holding that Cal. Corp. Code § 25506[12] acts as an "absolute" time bar on claims); *In re VeriSign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1221 (N.D. Cal. 2007) (holding that Cal. Corp. Code § 25506 provides "a strict limit that may not be tolled"); *In re Atmel Corp. Derivative Litig.*, 2007 WL 2070299, at *11 (N.D. Cal. July 16, 2007) (same).  Delayed discovery is irrelevant.  *See SpeeDee Oil*, 95 Cal. App. 4th at 724 ("[D]elayed discovery or tolling rules do not apply . . . because of the express language of [the statute].").[13]

Plaintiff alleges that underlying misconduct occurred "in or around 2009 through 2012."  Compl. ¶ 22.  Plaintiff was required to bring the action within two years.  But Plaintiff did not sue until February 28, 2017.  Thus, Plaintiff's claim for a violation of Section 27201 is untimely.

### E.     Plaintiff Fails To State A RICO Claim (Count V)

Next, Plaintiff asserts that Defendants violated RICO, 18 U.S.C. § 1962(c). A section 1962(c) claim requires proof of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *See United States v. Fernandez*, 388 F.3d 1199, 1221 (9th Cir. 2004).  Racketeering is statutorily defined as including certain predicate crimes.  18 U.S.C. § 1961(5).  Here, Plaintiff's claim fails because: (i) pursuant to the Private Securities Litigation

---

[12] California Corporations Code § 25506, like § 27201, provides that actions must be brought "before the expiration of four years after the act or transaction constituting the violation or the expiration of one year after the discovery by the plaintiff of the facts constituting the violation, whichever shall first expire[.]"

[13] The Court in *SpeeDee Oil* analyzed Cal. Corp. Code sections 31303 and 31304, which contain similar language to Section 27201.

1  Reform Act, alleged securities law violations cannot support a RICO claim; (ii)

2  Plaintiff fails to allege a predicate statutory violation, because he cannot sustain a

3  claim for financial institution fraud; and (iii) Plaintiff fails to allege the existence

4  of a criminal enterprise.

5          1.  **A RICO Claim Cannot Be Predicated On Securities Fraud**

6        Conduct actionable as securities fraud cannot support RICO liability.

7  Congress eliminated securities fraud as a RICO predicate act through the Private

8  Securities Litigation Reform Act ("PSLRA").  Pub. L. No. 104-67 § 107, 109 Stat.

9  737 (1995) (amending 18 U.S.C. § 1964(c)); *see also Swartz v. KPMG LLP*, 476

10  F.3d 756, 762 (9th Cir. 2007).  The statute states that "no person may rely upon

11  any conduct that would have been actionable as fraud in the purchase or sale of

12  securities to establish a violation of section 1962."  18 U.S.C. § 1964(c)).  As

13  explained by the Second Circuit in *MLSMK Inv. Co. v. JP Morgan Chase & Co.*,

14  the PSLRA was designed to "prevent litigants from using artful pleading to boot-

15  strap securities fraud cases into RICO cases, with their threat of treble damages."

16  651 F.3d 268, 274 (2d Cir. 2011) (citations omitted) (PSLRA amendment barred

17  plaintiff from asserting civil RICO claim arising out of alleged Ponzi scheme); *see*

18  *also Estate of Gottdiener v. Sater*, 35 F. Supp. 3d 386, 394 (S.D.N.Y. 2014)

19  (quoting then-Chairman Arthur Levitt's congressional testimony that "it is both

20  unnecessary and unfair to expose defendants in securities cases to the threat of

21  treble damages and other extraordinary remedies provided by RICO") (citations

22  omitted).

23        Plaintiff cannot skirt this bar by avoiding using the term "securities fraud"

24  when alleging RICO violations.  For example, in *O'Callaghan v. New York Stock*

25  *Exchange*, the plaintiff alleged under RICO that "illegal activities" occurred and

26  that there was a "scheme" in which trading desks "[gave] insider information [to] .

27  . . floor members in exchange for cash," though he did not explicitly allege that the

28  defendants had committed securities fraud.  2013 WL 3984887, *14 (S.D.N.Y.

- 20 -

Aug. 2, 2013).  The Court stated that the PSLRA "bars any RICO claim sounding in fraud if the claim could have been framed as securities fraud."  *Id.*; *see also Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) (stating that courts should "strive to flush out frivolous RICO allegations at an early stage of the litigation" and "lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb") (citations omitted), *disagreed with on other grounds by Pavlov v. Bank of New York Co., Inc.*, 2002 WL 63576, at *1 (2d Cir. Jan. 14, 2002).

As in *O'Callaghan*, Plaintiff's claims amount to allegations of securities fraud.  The Complaint makes this evident.  Plaintiff's first cause of action is for fraud "aris[ing] from violations of . . . Rule 15c3-3."  Compl. ¶ 20.  Plaintiff further alleges that "certain transactions, acts, practices and course of [Defendants'] conduct constitut[e] violations of the Federal Securities laws" and that "[v]enue is proper in the Southern District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a)[.]"  *Id.* at ¶ 14.  Plaintiff even states that he "incorporates by reference the claims, facts and admissions contained within the SEC Order," which alleged violations of securities laws.  *Id.* at ¶ 1; *see* SEC Rel. ¶ 79-83.

Thus, the PSLRA bars Plaintiff from pursuing a RICO claim.

## 2.  **Plaintiff Fails To Allege Predicate Statutory Violations**

Plaintiff also fails to plead that the Defendants engaged in two RICO predicate violations of law.  18 U.S.C. 1961(5) ("'pattern of racketeering activity' requires at least two acts of racketeering activity").  The only predicate statutory violation pleaded in the Complaint is "Financial Institution Fraud."  *See* Compl. ¶ 116-120.  The statute that Plaintiff is presumably relying on but does not cite, 18 U.S.C. § 1344, makes it a crime to "to defraud a financial institution."  *See* 18 U.S.C. § 1344(1).  However, Plaintiff has not sufficiently pleaded a predicate violation of section 1344.

1    *First*, given that section 1344 prohibits defrauding a financial institution,

2    *only* financial institutions have standing to assert financial institution fraud as a

3    predicate act for RICO purposes.  *See Herrick v. Liberty League Int'l*, 2008 WL

4    2230702, *4 (S.D. Ohio May 28, 2008); *Best Deals on TV, Inc. v. Naveed*, 2007

5    WL 2825652, *10 (N.D. Cal. Sept. 26, 2007); *Starfish Inv. Corp. v. Hansen*, 370 F.

6    Supp. 2d 759, 773 (N.D. Ill. 2005).  Plaintiff is not a financial institution, and thus

7    cannot rely on this RICO predicate.

8    *Second*, regardless, the Complaint does not allege a fraud "against" a

9    financial institution as required by section 1344.  Plaintiff alleges only that

10   customers were victims of fraud "by" a financial institution.  *See* Compl. ¶117;

11   *Bressner v. Ambroziak*, 379 F.3d 478, 482 (7th Cir. 2004) ("An essential element

12   of bank fraud is 'intent to deceive a bank in order to obtain from it money or other

13   property.'"); *United States v. Jacobs*, 117 F.3d 82, 92 (2d Cir. 1997) ("In order for

14   the bank fraud statute to apply, the fraud must be against the bank."), *abrogated on*

15   *other grounds by Loughrin v. United States*, 134 S. Ct. 2384 (2014).

16          3.    **Plaintiff Fails to Allege the Existence of a RICO Enterprise**

17          Finally, Plaintiff has not properly pleaded the existence of a RICO

18   enterprise.  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)

19   (plaintiff must allege the existence of "(1) a 'person'; and (2) an 'enterprise' that is

20   not simply the same 'person' referred to by a different name").  A "single

21   individual or entity cannot be both the RICO enterprise and an individual RICO

22   defendant."  *River City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1461

23   (9th Cir. 1992).

24          Plaintiff alleges that the RICO persons are MLPF&S, MLPro, and Mr.

25   Tirrell.  Compl. ¶ 110.  Plaintiff also alleges that those same persons comprise the

26   RICO enterprise.  *Id.* at ¶¶ 111-113.  As a matter of law, however, a parent

27   corporation, a subsidiary, and an employee may *not* comprise a RICO enterprise:

28

- 22 -

1

> [A] § 1962(c) claim [can] not be based on a RICO enterprise comprised of a corporation, a wholly-owned subsidiary and an employee of that corporate family if these entities were also plead as the RICO persons.

2

3

4  *Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 2010

5  WL 3619884, at *5 (N.D. Cal. Sept. 10, 2010); *see also Ray v. Spirit Airlines, Inc.*,

6  836 F.3d 1340, 1356 (11th Cir. 2016) (declining to find a RICO enterprise where a

7  corporation was the "defendant person, and the corporation, together with its

8  officers, agents, and employees, [were] said to constitute the enterprise");

9  *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344

10  (2d Cir. 1994) ("employees in association with the corporation do not form an

11  enterprise distinct from the corporation."); *Parker & Parsley Petroleum Co. v.*

12  *Dresser Indus.*, 972 F.2d 580, 583 (5th Cir. 1992); *Bd. of Cty. Comm'rs of San*

13  *Juan Cty. v. Liberty Grp.*, 965 F.2d 879, 885-86 (10th Cir. 1992) (RICO claim

14  failed where alleged enterprise consisted of "nothing more than the various officers

15  and employees of [the corporate defendant] carrying on the firm's business.").[14]

16      Thus, MLPF&S, its subsidiary, and its employees may not constitute a

17  RICO enterprise, and Plaintiff has failed to allege the existence of a RICO

18  enterprise as required by section 1962(c).

19      **F.**    **Plaintiff Fails To State A Claim For RICO Conspiracy (Count VI)**

20      Finally, Plaintiff's RICO conspiracy claim is subject to dismissal because he

21  has not alleged an underlying RICO violation.  *Cervantes Orchards & Vineyards,*

22  *LLC v. Deere & Co.*, 2015 WL 4210978, at *9 (E.D. Wash. July 10, 2015)

23  ("Because Plaintiffs have not stated a substantive RICO claim against the . . .

24  Defendants, their RICO conspiracy allegation under 18 U.S.C. § 1962(d) fails as to

25  these defendants as well."); *Best Deals on TV, Inc. v. Naveed*, 2007 WL 2825652,

26

27  ――――――――――――

28  [14] Plaintiff has even alleged that Merrill Lynch, MLPro and William Tirrell are effectively the same entity for purposes of the acts at issue.  Compl. ¶ 11.

1   at *11 (N.D. Cal. Sept. 26, 2007) ("A RICO conspiracy claim under 18 U.S.C. §

2   1962(d) requires adequate pleading of an underlying 19 U.S.C. § 1962(c) claim.").

**IV.   SLUSA Bars Plaintiff's State Law Claims (Counts I-IV)**

4          Even if this court finds that Plaintiff has otherwise sufficiently pleaded his

5   state law claims, the Securities Litigation Uniform Standards Act of 1998

6   ("SLUSA") would preempt them.  15 U.S.C. § 78bb(f)(1).  SLUSA mandates the

7   dismissal of any action that is: "(1) a covered class action (2) based on state law

8   claims (3) alleging that defendant made a misrepresentation or omission or

9   employed any manipulative or deceptive device (4) in connection with the

10  purchase or sale of (5) a covered security."  *Freeman Invs., L.P. v. Pac. Life Ins.*

11  *Co.*, 704 F.3d 1110, 1114 (9th Cir. 2013).  Element one is present because Plaintiff

12  seeks to represent a class of more than 50 individuals.  15 U.S.C. §

13  78bb(f)(5)(B)(i)(I).  Element two is present because Counts I through IV of the

14  Complaint allege state law claims.  Element three is present because the Complaint

15  is based on alleged misrepresentations or omissions.  Element five is present

16  because brokerage accounts are maintained "for the very purpose of trading in

17  securities," thus, Plaintiff would have traded in covered securities through his

18  Merrill Lynch account.  *Angelastro v. Prudential-Bache Sec.*, 764 F.2d 939, 944

19  (9th Cir. 1985).

20         With respect to the fourth element, SLUSA preemption requires that the

21  action arises "in connection with the purchase or sale of . . . a covered security."

22  *See Freeman Invs., L.P.*, 704 F.3d at 1114; *see also Chadbourne & Park LLP v.*

23  *Troice*, 134 S. Ct. 1058, 1066 (2014); *Merrill Lynch, Pierce, Fenner & Smith Inc.*

24  *v. Dabit*, 547 U.S. 71, 89 (2006).  This requirement is satisfied where, like here, a

25  plaintiff alleges that a misrepresentation or omission impacted his choice of

26  securities broker.  For example, in *Lim v. Charles Schwab & Co.*, this Court held

27  that the "in connection" element was met because fraudulent conduct was directed

28  at the broker's clients "in order to induce them to purchase or sell securities

through [the broker] for a fee."  2015 WL 7996475, at *7 (N.D. Cal. Dec. 7, 2015), *appeal docketed*, No. 16-15189 (9th Cir. Feb. 8, 2016) (if deceptive conduct was "an inducement intended to cause customers to choose Schwab over competing brokers, that would not mean Schwab's misrepresentations were other than 'in connection with' securities transactions"); *see also Lewis v. Scottrade, Inc.*, 204 F. Supp. 3d 1064, 1068 (E.D. Mo. 2016), *appeal docketed*, No. 16-3808 (8th Cir. Oct. 3, 2016); *Zola v. TD Ameritrade, Inc.*, 172 F. Supp. 3d 1055 (D. Neb. 2016); *SEC v. Crowe*, 2016 WL 6125401, at *11 (E.D. Ohio Oct. 20, 2016) (alleged misrepresentation was material to plaintiff's decision to purchase or sell securities through State Street and, therefore, fraud was "in connection with the purchase and sale of securities").

Here, Plaintiff alleges that Merrill Lynch's misrepresentations or omissions relating to compliance with Rule 15c3-3 caused Plaintiff to keep his investment account with Merrill Lynch.  Compl. ¶ 85.  Furthermore, Plaintiff claims that he and the class members "lost investment returns that would have been recouped if they had invested their securities themselves without the use of Defendant's services." *Id.* at ¶ 74 (second bullet).  By allegedly inducing Plaintiff to keep his accounts, as in *Lim*, the alleged misrepresentations were "material to every decision to purchase or sell a security through" Merrill Lynch and were made "in connection with the purchase or sale of a covered security." *Lim*, 2015 WL 7996475, at *7.

## Conclusion

The Court should allow this motion, and dismiss the Complaint.

Dated:        April 28, 2017                    Respectfully submitted,

/s/ Brian M. Jazaeri
MORGAN, LEWIS & BOCKIUS LLP
Brian M. Jazaeri, Bar No. 221144
brian.jazaeri@morganlewis.com
Lisa Veasman, Bar No. 259050
lisa.veasman@morganlewis.com
300 South Grand Avenue, 22nd Floor

- 25 -

Los Angeles, CA  90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501

WILMER CUTLER PICKERING HALE
    AND DORR
Matthew Martens, NJ:047541998,
NY:5275631, DC, NC
matthew.martens@wilmerhale.com
Timothy Perla, MA: 660447
timothy.perla@wilmerhale.com
Harriet Hoder, MA: 679416
harriet.hoder@wilmerhale.com
60 State Street
Boston, MA 02109 USA
Tel:   +1.617.526.6000
Fax:   +1.617.526.5000
(*Pro Hac Vice* Applications Pending)

Gregory Boden, Bar No. 301779
gregory.boden@wilmerhale.com
350 S. Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel:   +1.213.443.5300
Fax:   +1.213.443.5400

Attorneys for Defendants, Merrill Lynch
Pierce, Fenner & Smith, Inc. and Merrill
Lynch Professional Clearing Corp.

Dated:      April 28, 2017          /s/  John J. Rice
                                   HIGGS FLETCHER & MACK LLP
                                   John J. Rice, Bar No. 140865
                                   ricej@higgslaw.com
                                   401 West A Street, Suite 2600
                                   San Diego, CA 92101
                                   Tel:   +1.619.236.1551
                                   Fax:   +1.619.696.1410

                                   FRIED, FRANK, HARRIS, SHRIVER &
                                       JACOBSON LLP
                                   Peter Simmons (NY: 2166502, Admitted
                                   *Pro Hac Vice*)
                                   peter.simmons@friedfrank.com
                                   Andrew Buckley Cashmore (NY: 5243084,
                                   Admitted *Pro Hac Vice*)
                                   andrew.cashmore@friedfrank.com
                                   One New York Plaza
                                   New York, New York 10004
                                   Tel:   +1.212.859.8455
                                   Fax:   +1.212.859.4000

                                   Attorneys for Defendant, William Tirrell

- 26 -

**SIGNATURE CERTIFICATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to the following counsel: John Rice and Peter Simmons (Counsel for Defendant William Tirrell).  I also certify that I have obtained Mr. Rice's authorization to affix his electronic signature to this document.

/s/ Brian M. Jazaeri
Brian M. Jazaeri

DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:17-cv-00409-L-MDD