WILMER CUTLER PICKERING
    HALE AND DORR
Matthew Martens (NJ:047541998,
NY:5275631, DC, NC)
Timothy Perla (MA: 660447)
Harriet Hoder (MA: 679416)
60 State Street
Boston, MA 02109 USA
Tel: (617) 526-6000
(*Pro Hac Vice* Applications Pending)

BROWN LAW GROUP
Janice P. Brown, Bar No. 114433
Noah J. Woods, Bar No. 264823
600 B Street, Suite 1650
San Diego, CA 92101
Tel:   (619) 330-1700
Fax:   (619) 330-1701

Attorneys for Defendants Merrill Lynch
Pierce, Fenner & Smith, Inc. and Merrill
Lynch Professional Clearing Corp.

[Additional Defense Counsel Identified in
Signature Blocks]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JIAO, and SAMUEL NUNEZ, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>       vs.<br><br>MERRILL LYNCH PIERCE, FENNER & SMITH, INC.; MERRILL LYNCH PROFESSIONAL CLEARING CORP.,<br><br>                    Defendants. | Case No. 3:17-cv-00409-L-MDD<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS**<br><br>**[FRCP RULE 9(B), 12(B)(1), 12(B)(2), 12(B)(3), 12(B)(6)]**<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT<br><br>Date:      July 17, 2017<br>Judge:    Hon. M. James Lorenz<br>Ctrm:     5B (5th Floor-Schwartz) |

# MEMORANDUM IN SUPPORT OF
# DEFENDANTS' JOINT MOTION TO DISMISS

## Table of Contents

Page

Introduction ................................................................................................ 1

Background ................................................................................................. 3

    A.    The Parties ................................................................................ 3

    B.    Rule 15c3-3 and the Leveraged Conversion Trades ............................ 4

    C.    The SEC Settlement .................................................................. 5

Argument .................................................................................................... 6

I.    This Court Lacks Personal Jurisdiction Over Defendants ............................. 6

    A.    General Jurisdiction Is Lacking ................................................... 7

    B.    Specific Jurisdiction Is Lacking ................................................ 10

II.    Plaintiffs Lack Standing ...................................................................... 11

III.    The FAC Fails to State a Claim for Relief ............................................ 13

    A.    Plaintiffs' Fraud Claim Fails (Count I) ......................................... 14

    B.    Plaintiffs' Negligence Claim Fails (Count II) ................................. 19

    C.    Plaintiffs' California Corporations Code Claim Fails (Count III) ...... 20

Conclusion ............................................................................................... 23

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**CASES**

4

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal.

5

App. 4th 226 (2007) ................................................................. 14

6

*Bennett v. Berg*, 685 F.2d 1053 (8th Cir. 1982) ....................................... 15

7

*BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549 (2017) ....................................... 7

8

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ........................... 10

9

*Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955 (N.D. Cal. 2015) .................... 8

10

11

*Chadbourne & Park LLP v. Troice*, 134 S. Ct. 1058 (2014) ................. 22

12

*Chiarella v. United States*, 445 U.S. 222 (1980) ...................................... 16

13

*Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970 (N.D. Cal. 2016) .................. 8

14

*Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152 (D.C. Cir.

15

2005) ......................................................................................... 12

16

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) .......................................... 2, 7, 8, 10

17

*David v. Alphin*, 704 F.3d 327 (4th Cir. 2013) ......................................... 12

18

*DeBlasio v. Merrill Lynch & Co.*, No. 07-cv-318, 2009 WL 2242605

19

(S.D.N.Y. July 27, 2009) ............................................................ 13

20

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) ................................... 9

21

*Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951 (Cal. 1997) .................... 18

22

23

*Equity Trust Co. v. Hebert*, No. 09-040-122 CV, 2004 WL 2474845

(Ct. App. Tex. Nov. 4, 2004) ...................................................... 9

24

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110 (9th Cir.

25

2013) ....................................................................................... 22

26

27

- ii -

28

*Gracious Living Corp. v. Colucci & Gallaher, PC*, 216 F. Supp. 3d 662 (D.S.C. 2016) ............................................................................. 8

*Gray v. Seaboard Sec., Inc.*, 126 F. App'x 14 (2d Cir. 2005) ................................ 22

*Gulf Coast Bank & Trust Co. v. Designed Conveyor Sys., LLC*, No. 16-cv-412, 2017 WL 120645 (M.D. La. Jan. 12, 2017) ................................. 8

*Hanson v. Denckla*, 357 U.S. 235 (1958) ............................................................. 10

*Henderson v. United Student Aid Funds, Inc.*, No. 13-cv-1845, 2015 WL 12658485 (S.D. Cal. Apr. 8, 2015) ........................................................... 8

*In re Atmel Corp. Derivative Litig.*, No. C 06-4592, 2007 WL 2070299 (N.D. Cal. July 16, 2007) ......................................................... 21

*In re iPhone Application Litig.*, No. 11–MD–02250, 2011 WL 4403963 ............................................................................................ 13

*In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518 (5th Cir. 1995) ........................ 12

*In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259 (2d Cir. 1993) .............................. 16

*In re VeriSign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) ..................................................................................................... 20

*Kiefer v. Simonton Bldg. Prods., LLC*, No. CV 16-3540, 2017 WL 1380497 (D. Minn. Apr. 17, 2017), *appeal docketed*, No. 17-2095 (8th Cir. May 18, 2017) ................................................................ 16

*Lewis v. Scottrade, Inc.*, 204 F. Supp. 3d 1064, 1068 (E.D. Mo. 2016), *appeal docketed*, No. 16-3808 (8th Cir. Oct. 3, 2016) ........................... 18, 23

*Lim v. Charles Schwab & Co.*, No. 15-cv-02074, 2015 WL 7996475 (N.D. Cal. Dec. 7, 2015), *appeal docketed*, No. 16-15189 (9th Cir. Feb. 8, 2016) ....................................................................................... 18, 23

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (Cal. Ct. App. 1997) ......................... 17

*Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (Cal. Ct. App. 2001) ....................... 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................ 11

- iii -

*Martinez v. Aero Caribbean*, 764 F.3d 1062 (9th Cir. 2014) .................................... 7

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71
(2006) .................................................................................................................. 22

*Moore v. Kayport Package Express, Inc*., 885 F.2d 531 (9th Cir.
1989) .................................................................................................................... 14

*Overstock.Com, Inc. v. Goldman Sachs & Co.*, 231 Cal. App. 4th 513
(2014) .................................................................................................................. 10

*People ex rel. Dept. of Corp. v. SpeeDee Oil Change Sys., Inc.*, 95
Cal. App. 4th 709 (Cal. Ct. App. 2002) .................................................. 20, 21

*Peterson v. Sec. Settlement Corp.*, 226 Cal. App. 3d 1445 (Cal. Ct.
App. 1991) .......................................................................................................... 17

*Pokemon Co. Int'l, Inc. v. Shopify, Inc.*, No. 16-mc-80272, 2017 WL
697520 (N.D. Cal. Feb. 22, 2017) ...................................................................... 9

*Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529 (2d Cir. 1999) ........................ 17

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir.
2004) ................................................................................................................ 6, 10

*SEC v. Crowe*, No. 2:16-cv-36, 2016 WL 6125401 (E.D. Ohio Oct.
20, 2016) ...................................................................................................... 18, 23

*SEC v. Seaboard Corp.*, 677 F.2d 1301 (9th Cir. 1982) ...................................... 20

*Sierra-Bay Fed. Land Bank Ass'n v. Superior Court*, 227 Cal. App. 3d
318 (Cal. Ct. App. 1991) ................................................................................... 20

*Skurkis v. Montelongo*, No. 16-cv-0972, 2016 WL 4719271 (N.D. Cal.
Sept. 9, 2016) ....................................................................................................... 9

*Swinden v. Vanguard Grp., Inc.*, No. C 09-03816, 2009 WL 3415376
(N.D. Cal. Oct. 21, 2009) .................................................................................. 17

*United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d
1161 (9th Cir. 2016) ..................................................................................... 14, 15

*United States v. Finnerty*, 533 F.3d 143 (2d. Cir. 2008) .........................................14

*United States v. Laurienti*, 611 F.3d 530 (9th Cir. 2010).........................................17

*Wal-Mart Stores, Inc. v. Lemaire*, No. 1 CA-SA 17-0003, 2017 WL
    1954809 (Ariz. Ct. App. May 11, 2017) ...........................................8

*Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 24 Cal. App. 3d
    35 (1972) ...........................................................10

*Williams v. Yamaha Motor Co., Ltd.*, 851 F.3d 1015 (9th Cir. 2017)......................9

*Zola v. TD Ameritrade, Inc.*, 172 F. Supp. 3d 1055 (D. Neb. 2016)................18, 23

## STATUTES, RULES, AND REGULATIONS

17 C.F.R. § 240.15c3-3..................................................................*passim*

15 U.S.C. § 78bb..............................................................................21, 22

28 U.S.C. § 1391.................................................................................10

Cal. Civ. Code § 3294.........................................................................19

Cal. Corp. Code § 25506................................................................20, 21

Cal. Corp. Code § 27100..........................................................................22

Cal. Corp. Code § 27101 .......................................................1, 3, 20, 21, 22

Cal. Corp. Code § 27200 ...................................................................1, 20

Cal. Corp. Code § 27201 ................................................................20, 21

Cal. Corp. Code § 31303 .........................................................................21

Cal. Corp. Code § 31304 .........................................................................21

Cal. Evid. Code § 300.............................................................................19

Cal. Evid. Code § 669.......................................................................19, 20

Fed. R. Civ. P. 9(b).........................................................1, 3, 13, 14, 16

- v -

Fed. R. of Civ. P. 12 ............................................................... 1, 6, 10, 11, 13

Racketeer Influenced and Corrupt Organizations Act ("RICO") ............................ 1

Securities Litigation Uniform Standards Act ("SLUSA") ............... 3, 18, 21, 22, 23

## OTHER AUTHORITIES

5 Witkin, Summary of Cal. Law Torts § 772 (10th ed. 2005) ................................ 14

9 Witkin, Summary of Cal. Law Torts § 835 (10th ed. 2005) ................................ 19

- vi -

Defendants respectfully submit this Memorandum of Law in support of their Motion to Dismiss pursuant to Fed. R. Civ. P. 9(b), and 12(b)(1), (2), (3), and (6).

**Introduction**

In this putative class action, opportunistic Plaintiffs attempt to capitalize on a 2016 regulatory settlement among Merrill Lynch Pierce, Fenner & Smith, Inc. ("MLPF&S"), Merrill Lynch Professional Clearing Corp. ("MLPro") (collectively, "Merrill Lynch"), and the Securities and Exchange Commission ("SEC") concerning SEC Rule 15c3-3. Plaintiff James Jiao filed this lawsuit on February 28, 2017. The original complaint brought claims for fraud, negligence, negligence per se, state securities fraud under California Corporations Code §§ 27200 and 27101, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d). Defendants moved to dismiss on April 28, 2017, explaining why each claim was deficient. On May 19, 2017, Plaintiff filed an amended complaint, adding Plaintiff Samuel Nunez, removing Defendant William Tirrell, dropping several claims (in apparent recognition that they had no merit), and adding allegations that Plaintiffs evidently believe bolster their remaining claims. The new allegations, however, do not cure the deficiencies of Plaintiffs' claims. The FAC should be dismissed with prejudice, as Plaintiffs have already had a chance to amend the Complaint and it still lacks the requisite allegations.

Rule 15c3-3(e) requires broker dealers to maintain a Special Reserve Account for the Benefit of Customers ("Reserve Account") containing assets in an amount at least equal to the net cash owed to customers, to protect customer cash if a broker dealer fails. 17 C.F.R. § 240.15c3-3(e). The SEC criticized Merrill Lynch for engaging in trades that had the effect of reducing the necessary balance of the Reserve Account. However, Merrill Lynch never failed, and the SEC itself

- 1 -

stated that "**no customers were harmed**" by the trading.  *See* First Amended Complaint ("FAC" or the "Complaint"), Ex. A, Merrill Lynch, Pierce, Fenner & Smith Inc. and Merrill Lynch Professional Clearing Corp., Release No. 78141, at ¶ 50 (Jun. 23, 2016) (hereinafter "SEC Rel.") (emphasis added).

Notwithstanding the lack of harm, and that the SEC has already fully addressed any regulatory violation, Plaintiffs now seek to maintain class claims for fraud, negligence, and a violation of the California Corporations Code.  Despite the fact that the securities trading at issue in the regulatory settlement never impacted a customer account and only diminished the amount held in Merrill Lynch's own Reserve Account, Plaintiffs nevertheless mistakenly claim that this conduct constituted a fraud that harmed customers.  Plaintiffs also conflate two separate requirements in Rule 15c3-3, one relating to customer cash and another relating to segregation of customer securities.  The Reserve Account requirements are germane only to the former, however.  The Court should dismiss the Complaint for the following reasons.

*First,* this Court does not have personal jurisdiction over either Defendant. There is no general personal jurisdiction under the Supreme Court's *Daimler* case because no Defendant is at home in the Southern District of California—MLPF&S and MLPro are based in New York.  There is no specific personal jurisdiction because the alleged conduct at issue—trading in a manner that reduced Reserve Account balances—did not occur in this District.

*Second,* Plaintiffs lack standing because there is no injury.  As the SEC itself acknowledged, the trading at issue did not harm any customers.  It is thus unsurprising that the FAC pleads only vague, speculative purported injuries that are not cognizable.

*Third,* Plaintiffs have failed to plead their fraud and negligence claims with the specificity required by Rule 9(b).  Both claims are based on alleged misrepresentations and omissions.  However, the FAC fails to properly plead any false statement, and fails to establish a duty to support an omission claim.

*Fourth,* a non-tollable two-year limitations period bars Plaintiffs' claim under § 27101 of the California Corporations Code.  Plaintiffs also fail to explain how the statute applies to Defendants' alleged conduct, and fail to properly plead an actionable misrepresentation or omission supporting such a claim.

*Finally,* even if Plaintiffs' claims could otherwise survive, the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") preempts them.

Accordingly, the Court should dismiss the Complaint with prejudice.

## Background

### A.    The Parties

According to the FAC and the SEC Release attached thereto, Defendant MLPF&S is a broker-dealer organized under the laws of Delaware.  FAC ¶ 9.  It is headquartered in New York.  SEC Rel. at ¶ 1.  The FAC alleges that MLPF&S "does business throughout California," but offers no specifics.  FAC ¶ 10.

Defendant MLPro is a subsidiary of MLPF&S, and is a broker dealer.  *Id.* at ¶¶ 14, 32.  It is headquartered in New York.  SEC Rel. at ¶ 2; FAC ¶ 14.  The FAC does not allege that MLPro conducts any business in the Southern District of California.

Plaintiffs James Jiao and Samuel Nunez allege that they were customers of Merrill Lynch from at least January 1, 2009 through December 31, 2012.  FAC ¶¶

- 3 -

1   23, 24.  Plaintiffs reside in the county of San Diego, California.  *Id.*  Both Mr. Jiao

2   and Mr. Nunez are former employees of MLPF&S.[1]

3        **B.**     **Rule 15c3-3 and the Leveraged Conversion Trades**

4        SEC Rule 15c3-3 is designed to protect customer securities and customer

5   cash if a broker-dealer fails.  With respect to securities, the broker-dealer is

6   required to maintain physical control of fully-paid customer securities, and

7   segregate them in an account that is not subject to obligations of the broker-dealer.

8   17 C.F.R. § 240.15c3-3(b), (c); SEC Rel. ¶ 13 (describing "Requirements For

9   Customer Securities").  This is because customer securities are not assets of the

10  broker dealer, but rather remain customer property.  *See* SEC Rel. ¶ 13 n.3.

11  Plaintiffs have not made any allegations concerning the securities segregation

12  requirement.  *See generally* FAC.

13       Plaintiffs' allegations relate *only* to the section of Rule 15c3-3 that addresses

14  customer cash.  That section requires broker-dealers to maintain a "Reserve

15  Account" holding broker-dealer assets at least equal in value to the net cash owed

16  to customers.  17 C.F.R. § 240.15c3-3(e); SEC Rel. ¶¶ 8-9 (describing

17  "Requirements For Customer Cash").  The Reserve Account is an account

18  established and held by the broker dealer, holding its own assets, and does not

19  contain customer assets.  *See* Rule 15c3-3(e).  A complex calculation set forth in

20  Rule 15c3-3 determines the reserve amount.  Broadly speaking, the formula sums

21

22

23

---

24  [1] Merrill Lynch terminated Mr. Jiao as part of a reduction in force.  In exchange for

25  severance benefits, he signed a general release of claims "under any possible legal, equitable, contract, tort, or statutory theory."  This release creates unique

26  circumstances for Mr. Jiao that undermine his ability to serve as a class representative.

27

28  DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:17-cv-00409-L-MDD

1  the customer credit that a firm owes to customers (*e.g.,* cash in accounts), and then
2  subtracts customer debits owed by customers (*e.g.,* margin loan balances).  *Id.*[2]

3       Between 2009 and 2012, Merrill Lynch executed a series of trades, termed
4  "Leveraged Conversion Trades," that reduced the amount that Merrill Lynch was
5  required to hold in its Reserve Account.  FAC ¶¶ 44-58; SEC Rel. at ¶ 14.
6  Although the precise details of the trades are not relevant here (and are fully
7  spelled out in the SEC Release), the general structure was as follows.  Merrill
8  Lynch would provide a margin loan to a customer who agreed in advance to
9  transact with Merrill Lynch; the customer in turn would use the proceeds to
10  purchase securities from Merrill Lynch's inventory, together with put and call
11  options on those securities.  SEC Rel. at ¶¶ 18-20.  The existence of the margin
12  loan (which represented a sum owed to Merrill Lynch) reduced the balance that
13  Merrill Lynch was required to deposit into the Reserve Account.  *Id.* at ¶ 16.

14       The FAC does not allege—and could not truthfully allege—that the
15  Leveraged Conversion Trades ever involved transactions in customer accounts
16  (other than for the limited number of sophisticated counterparties who *agreed* to
17  participate in the Leveraged Conversion Trades, as described above), or the
18  removal of any cash from customer accounts.  Accordingly, Plaintiffs do not allege
19  that any cash was ever removed from their accounts.  Nor do they allege that their
20  accounts lost any value because of the trades.

21  **C.    The SEC Settlement**

22       Before Merrill Lynch began making the Leveraged Conversion Trades, it
23  approached the Financial Industry Regulatory Authority ("FINRA") and the SEC

---

[2] Contrary to Plaintiffs' assertions, the cash amount on customer statements does not reflect the amount in the Reserve Account.  *See* FAC ¶ 38.  Rather, the "somewhat complex" Reserve Formula determines the amount of cash or qualified securities that must be kept in the Reserve Account.  SEC Rel. at ¶¶ 9-10.

to explain the proposed trades and obtain approval, which was granted.  *Id.* at ¶¶ 24-25.  However, over time the methodology for making the trades changed.[3]  Merrill Lynch never obtained updated approval from FINRA.  *Id.* at ¶¶ 43-44.  The SEC determined that the modified trading mechanics caused the trades to violate Rule 15c3-3.

The SEC investigated, and Merrill Lynch cooperated fully.  *Id.* at ¶ 76.  On June 23, 2016, Merrill Lynch agreed to pay the SEC a penalty of $358 million and disgorgement of $50 million for several violations, including violations of Rule 15c3-3 related to the Leveraged Conversion Trades.  *Id.* at 21-23.  In its release announcing the settlement, the SEC noted that the Leveraged Conversion Trades created the potential for customer loss in the event Merrill Lynch failed, but found that no customers were harmed by the violations.  *Id.* at ¶ 50.

Because all of Plaintiffs' claims are deficient, and because Plaintiffs have already taken an opportunity to amend, the Court should now dismiss this case with prejudice.

## Argument

### I.  This Court Lacks Personal Jurisdiction Over Defendants

The Court should dismiss the Complaint because this Court lacks personal jurisdiction over the Defendants.  *See* Fed. R. of Civ. P. 12(b)(2).  Plaintiffs have the burden of demonstrating that the Court's exercise of jurisdiction is proper.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  The FAC must "make a prima facie showing of jurisdictional facts."  *Id.*  Here, however, the FAC does not allege a basis for general or specific personal

---

[3] Merrill Lynch began to execute the Leveraged Conversion Trades using over-the-counter options (rather than options listed on an exchange) in an effort to expand the universe of securities that could be financed by the trade, and to reduce the impact of potential market risks.  SEC Rel. ¶¶ 40-41.

- 6 -

1  jurisdiction.

2  **A.  General Jurisdiction Is Lacking**

3      The Supreme Court in *Daimler AG v. Bauman* recently announced that

4  general jurisdiction over a corporation is appropriate only when the corporation's

5  contacts in the forum state "are so constant and pervasive as to render it essentially

6  at home" in the state.  134 S. Ct. 746, 751 (2014) (quotations omitted).  The Court

7  explained that the "paradigm" for general jurisdiction is a corporation's place of

8  incorporation and principal place of business.  *Id.* at 760.  The Court thus held that

9  a German corporation was not subject to general jurisdiction in California based on

10  the California contacts of its subsidiary, even though its subsidiary had multiple

11  facilities in California and was the largest supplier of luxury vehicles to the

12  California market.  *Id.* at 762.  In a more recent decision, the Supreme Court

13  reiterated that the *Daimler* inquiry "'calls for an appraisal of a corporation's

14  activities in their entirety'" and that "'a corporation that operates in many places

15  can scarcely be deemed at home in all of them.'"  *BNSF Ry. Co. v. Tyrrell*, 137 S.

16  Ct. 1549, 1559 (2017) (quoting *Daimler*, 134 S. Ct. at 762 n.20) (no general

17  jurisdiction in Montana over railway company that had 2,061 miles of track and

18  automotive facility employing 2,100 workers in the state).

19      Defendants are not subject to the general jurisdiction of this Court under

20  *Daimler* and its progeny.  MLPF&S is incorporated in Delaware and has its

21  principal place of business in New York.  FAC ¶ 9; SEC Rel. at ¶ 1.  Plaintiffs'

22  allegation that MLPF&S "does business throughout California" is fatally vague,

23  and cannot establish general jurisdiction under *Daimler* and *BNSF*.  FAC ¶ 10; *see*

24  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (no general

25  jurisdiction over defendant who had contracts with California companies worth

26  between $225 and $450 million, sent employees to California, and advertised in

27

28

- 7 -

DEFENDANTS' MOTION TO DISMISS
CASE NO. 3:17-cv-00409-L-MDD

1    trade publications with distribution in California); *Corcoran v. CVS Health Corp.*,

2    169 F. Supp. 3d 970, 980-81 (N.D. Cal. 2016) (no general jurisdiction where

3    plaintiffs contended that CVS Health had a substantial number of pharmacies,

4    maintained two distribution centers and solicited employees in California); *Cahen*

5    *v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 963-65 (N.D. Cal. 2015) (no general

6    jurisdiction with respect to defendant car manufacturer who had 302 employees in

7    California and over one hundred thousand cars registered in California in the past

8    year); *Henderson v. United Student Aid Funds, Inc.*, No. 13-cv-1845, 2015 WL

9    12658485, at *2-3 (S.D. Cal. Apr. 8, 2015) (corporation not considered "at home"

10   in California, even though it had "two offices, over 300 employees, [was] licensed

11   to do business in California, pa[id] taxes in California, derive[d] 5.8% of its annual

12   revenue from California, and [was] named as a defendant in various civil actions in

13   California").

14        This Court also lacks general jurisdiction over MLPro, which is

15   headquartered in New York.  SEC Rel. at ¶ 2.  The Complaint alleges only that

16   MLPro has an agent for service in Los Angeles and a license to sell securities in

17   California.  FAC ¶ 14.  These contacts are not enough to render MLPro "at home"

18   in California.  *Daimler*, 134 S. Ct. at 751; *see also Gulf Coast Bank & Trust Co. v.*

19   *Designed Conveyor Sys., LLC*, No. 16-cv-412, 2017 WL 120645, at *4 (M.D. La.

20   Jan. 12, 2017) ("[I]n light of *Daimler*, interpreting a registration statute [and the

21   registration as an agent of service] as giving consent to general jurisdiction is

22   untenable."); *Gracious Living Corp. v. Colucci & Gallaher, PC*, 216 F. Supp. 3d

23   662, 668 (D.S.C. 2016) (determining that a law firm's designation as statutory

24   agent of service was insufficient to find general jurisdiction over the firm in South

25   Carolina); *Wal-Mart Stores, Inc. v. Lemaire*, No. 1 CA-SA 17-0003, 2017 WL

26   1954809, at *1 (Ariz. Ct. App. May 11, 2017) (finding that "foreign corporations

27

28

- 8 -

do not impliedly consent to general jurisdiction . . . merely by . . . appointing agents for service of process"); *Equity Trust Co. v. Hebert*, No. 09-040-122 CV, 2004 WL 2474845, at *6 (Ct. App. Tex. Nov. 4, 2004) (determining that "the holding of a license to sell securities does not . . . establish general jurisdiction").

That MLPro is a subsidiary of MLPF&S also does not subject MLPro to California jurisdiction (even assuming that California jurisdiction over MLPF&S itself were proper). *See Williams v. Yamaha Motor Co., Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017) ("[T]he parent-subsidiary relationship does not on its own establish two entities as 'alter egos,' and thus does not indicate that general jurisdiction over one gives rise to general jurisdiction over the other."); *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (no jurisdiction over subsidiary even though parent monitored subsidiary's performance, supervised subsidiary's finance and capital budget decisions, and articulated general policies and procedures); *Pokemon Co. Int'l, Inc. v. Shopify, Inc.*, No. 16-mc-80272, 2017 WL 697520, at *4 (N.D. Cal. Feb. 22, 2017) (no jurisdiction over one of two related entities even though they employed the same privacy policy, shared principal officers and executives, and presented themselves as integrated on their website); *Skurkis v. Montelongo*, No. 16-cv-0972, 2016 WL 4719271, at *4-5 (N.D. Cal. Sept. 9, 2016) (no jurisdiction over subsidiary even though the parent company presented subsidiaries as one integrated company on its website, the parent had full ownership over subsidiary, and parent and subsidiary shared the same officers).

Finally, that MLPF&S and MLPro previously litigated in California (*see* FAC ¶¶ 12, 19) does not establish a basis for personal jurisdiction. Plaintiffs offer no facts about the cases cited in paragraphs 12 and 19 of the FAC or the asserted basis for personal jurisdiction therein, and there is no indication that the courts in those cases adjudicated personal jurisdiction. Further, both cases pre-date

1   *Daimler*—the *Ware* case (FAC ¶ 12) is from 1972 and the *Overstock* case (FAC ¶

2   19) was filed in 2007.  *See Overstock.Com, Inc. v. Goldman Sachs & Co.*, 231 Cal.

3   App. 4th 513 (2014); *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 24 Cal.

4   App. 3d 35 (1972).  Finally, even if a defendant chooses to waive personal

5   jurisdiction in one case, the defendant may challenge personal jurisdiction in

6   subsequent cases.  *See* Fed. R. Civ. P. 12(h).

7   **B.    Specific Jurisdiction Is Lacking**

8        A court may exercise specific jurisdiction where the suit "arises out of" or is

9   related to the defendant's contacts with the forum and the defendant "purposefully

10   avails itself of the privilege of conducting activities within the forum State."

11   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v.*

12   *Denckla*, 357 U.S. 235, 253 (1958)).  The Ninth Circuit employs a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

19   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

20        Here, the FAC does not allege that *any* of the relevant conduct occurred in or

21   was directed at California.  Furthermore, the SEC Release makes clear that the

22   Leveraged Conversion Trading at the center of the FAC took place in MLPF&S's

23   or MLPro's offices, which are based in New York.

24        There is, therefore, no basis for specific personal jurisdiction.[4]

---

25   [4] The lack of personal jurisdiction also renders venue improper under Rule

26   12(b)(3).  *See* 28 U.S.C. § 1391 (requiring that a defendant be subject to personal

27   jurisdiction in the district for venue to be proper).

- 10 -

## II.     Plaintiffs Lack Standing

The Court should also dismiss the Complaint pursuant to Rule 12(b)(1) because Plaintiffs have failed to plead an injury sufficient to establish constitutional standing.  Constitutional standing requires (1) an injury-in-fact that is "concrete and particularized" and "actual or imminent," (2) causation, and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted).

Here, the FAC does not satisfy constitutional standing requirements because, as the SEC found, the Leveraged Conversion Trades did not harm any customers. SEC Rel. at ¶ 50 ("no customers were harmed").  Plaintiffs do not allege that Merrill Lynch ever removed cash from their accounts due to the Leveraged Conversion Trades.  Instead, as detailed above, the Leveraged Conversion Trades involved trading of Merrill Lynch's *own* securities inventory, and the impact was in Merrill Lynch's Reserve Account.  Further, to the extent the required Reserve Account balance decreased, it was due to a margin loan being taken out by the counterparty to the Leveraged Conversion Trade.  No part of the trading had any impact on Plaintiffs' accounts.  In short, Plaintiffs lack injury because they are in the exact same position today that they would be in had the Leveraged Conversion Trades never occurred.

Plaintiffs cannot conjure injury by alleging that the Leveraged Conversion Trading subjected them to risk of loss if Merrill Lynch failed.  *E.g.*, FAC ¶ 49.  As a threshold matter, Plaintiffs' assertion of increased risk is unsupported with factual allegations—they do not assert that Merrill Lynch was at risk of failing during the putative class period, or that outstanding Leveraged Conversion Trading

- 11 -

ever increased a risk of loss in the event of such failure.[5]  In any event, at most, Plaintiffs allege a risk of a loss that never came to pass (because Merrill Lynch never failed).  Article III standing requirements prevent Plaintiffs from pursuing speculative injuries based on unrealized risk.  *See David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013) ("We find these risk-based theories of standing unpersuasive, not least because they rest on a highly speculative foundation lacking any discernible limiting principle."); *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005) ("[W]ere all purely speculative 'increased risks' deemed injurious, the entire requirement of actual or imminent injury would be rendered moot, because all hypothesized, non-imminent 'injuries' could be dressed up as 'increased risk of future injury.'"); *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995) (dismissing a RICO claim for lack of standing where the lost opportunity was obtaining a loan because "[s]uch lost opportunity by itself does not constitute an injury that confers standing").

Finally, Plaintiffs fare no better complaining that they lost an opportunity to obtain loan interest.  *See* FAC ¶ 86 (alleging that Defendants caused them "to lose out on either lost income due to loaning their assets to Merrill Lynch or lost income or gains they each would have made had had (sic) subjected his investments to these same risks independently, without Merrill Lynch"); ¶ 94 (alleging that Merrill Lynch "deprived its customers, including Plaintiffs, of legal interest to which Plaintiffs and members of the Class would have been entitled had Defendants obtained the funds through means of authorized loans").  This makes no sense because, as detailed above, the Leveraged Conversion Trades did not

---

[5] Leveraged Conversion Trades do not necessarily increase the risk of customer loss if a broker-dealer fails.  For instance, although a Leveraged Conversion Trade may reduce the Reserve Account balance, it also creates a corresponding secured margin loan (payable to Merrill Lynch and collateralized by marketable securities).

- 12 -

diminish the balance of Plaintiffs' accounts.  Thus, if Plaintiffs wanted to loan out cash from their accounts, the Leveraged Conversion Trades did not hinder their opportunity to do so.[6]

Regardless, assertions about lost opportunity—absent specific allegations of exactly what opportunity was lost, how Plaintiffs could and would have taken advantage of it, and the calculable financial loss—are impermissibly speculative. *See In re iPhone Application Litig.*, No. 11–MD–02250, 2011 WL 4403963, at *5-6 ("general allegations" about "lost opportunity costs" were insufficient to establish a concrete theory of injury for Article III standing).

Accordingly, Plaintiffs have not established injury, and therefore lack standing.[7]

## III.   The FAC Fails to State a Claim for Relief

The Court should also dismiss the FAC under Rule 9(b) and Rule 12(b)(6). Rule 9(b) applies to all claims, including the negligence claim, because they are based on the same allegations as the fraud claim.  *DeBlasio v. Merrill Lynch & Co.*, No. 07-cv-318, 2009 WL 2242605, at *12 (S.D.N.Y. July 27, 2009) (subjecting negligence claim to Rule 9(b) because it was "based on the same allegations of intentional misrepresentations and omissions by Defendants"). Under Rule 9(b), Plaintiffs "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This means the plaintiff must allege "the

---

[6] Plaintiffs mischaracterize the Leveraged Conversion Trades by casting them as a "loan" of assets to Merrill Lynch (FAC ¶ 86).  But there is no allegation that anything was ever removed from (or loaned out of) their accounts.  Instead, as detailed above, Merrill Lynch would loan *its own* funds (via margin loan), a sophisticated customer would purchase securities from *Merrill Lynch* inventory, and Merrill Lynch would reduce the balance in *its own* Reserve Account.

[7] Under the same reasoning, the Court could also dismiss Plaintiffs' claims under Rule 12(b)(6) for failure to adequately plead damages.

who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citations omitted).  Accordingly, "mere conclusory allegations of fraud are insufficient."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citations omitted).

### A.    Plaintiffs' Fraud Claim Fails (Count I)

Rule 9(b) makes clear that success on a fraud claim requires Plaintiffs to plead with particularity each of the following elements: (1) a misrepresentation or omission that defendant had a duty to disclose; (2) defendant's knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages.  5 Witkin, Summary of Cal. Law Torts § 772 (10th ed. 2005); *see also Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 240 (2007). Here, Plaintiffs fail to plead any of these elements.

### 1.    Failure to Plead a Misstatement

The FAC fails to allege with particularity that Defendants made a false statement.  The FAC does not contain any specific representations made by Defendants concerning Rule 15c3-3 compliance, Reserve Accounts, Leveraged Conversion Trades, or other matters addressed in the SEC Settlement.  *See generally* FAC (containing no such allegations).  This is dispositive because, to base a fraud claim on a SEC rule violation, Plaintiffs must, among other things, challenge an affirmative representation of rule compliance.  *See United States v. Finnerty*, 533 F.3d 143, 149-51 (2d. Cir. 2008) (explaining that a "violation of an [SEC] rule does not establish securities fraud in the civil context," and that plaintiff must show that defendants made an affirmative representation to plaintiffs that it would comply with the applicable securities regulations).

Plaintiffs cannot fill the void with vague allegations concerning statements allegedly made by Merrill Lynch.  The FAC devotes only three paragraphs to alleging what was represented:

- In paragraph 54, Plaintiffs allege that Defendants made "representation[s] that his assets would also be kept segregated from the investment firm's own account, with consumer funds maintained in an omnibus account…."  FAC ¶ 54.  The FAC does not, however, allege the time, speaker, medium, or content of the representations.

- In paragraph 107, Plaintiffs allege that Defendants provided them with "continuing oral assurances and published written materials," including a "pamphlet," containing "assurances that Defendants would continue to hold Plaintiffs' money in a manner consistent with all written and oral representations, in addition to the legal requirements Defendants were required to follow as it concerns the reserve account."  FAC ¶ 107.  The FAC, however, supplies no detail about this cryptic allegation, including what representations were made, by whom, to whom, and when.

- In paragraph 108, Plaintiffs refer to "letters" that Merrill Lynch's legal department supposedly would write upon request indicating that assets were segregated and thus protected from default.  FAC ¶ 108.  The FAC does not, however, allege the content of the letters, the sender, when they were sent, or even that any Plaintiff received one.

These allegations are fatally vague, and do not supply Defendants with meaningful information about what allegedly was said, when, by whom, to whom, or why it was false.  *See United Healthcare*, 848 F.3d at 1180 ("Broad allegations that include no particularized supporting detail do not suffice"); *Bennett v. Berg*,

- 15 -

685 F.2d 1053, 1062 (8th Cir. 1982) (allegations that misrepresentations were made in a pamphlet did not satisfy the requirements of Rule 9(b)); *accord Kiefer v. Simonton Bldg. Prods., LLC*, No. CV 16-3540, 2017 WL 1380497, at *5 (D. Minn. Apr. 17, 2017) (allegations of misrepresentations made on defendant's website, in print, or in promotional materials, without more, are fatally vague), *appeal docketed*, No. 17-2095 (8th Cir. May 18, 2017).

Further, the FAC does not allege falsity.  The challenged statements in paragraphs 54 and 108 largely concern assertions that customer assets are kept segregated, which Plaintiffs apparently deem false due to the existence of the Leveraged Conversion Trades.  But Plaintiffs conflate two distinct requirements of Rule 15c3-3.  As described above, Rule 15c3-3(b) contains the segregation requirement—*fully-paid customer securities* must be held in a separate account segregated from the firm's own assets and liabilities.  Leveraged Conversion Trades, however, do not concern customer securities or the associated segregation requirements.  Instead, Leveraged Conversion Trades reduce the Reserve Account balance corresponding to *net customer cash*, which is governed by Rule 15c3-3(e). *See* SEC Rel. ¶¶ 6-13.  Stated simply, Leveraged Conversion Trades have nothing to do with asset segregation requirements, and the existence of Leveraged Conversion Trades could not render false a statement about asset segregation.

Thus, Plaintiffs have failed to allege the existence of a false statement.

## 2. Failure to Plead an Actionable Omission

Plaintiffs fare no better asserting that Merrill Lynch committed fraud by omission.  *See* FAC ¶ 104.  An omission is actionable only when defendant is subject to a duty to disclose omitted facts.  *Chiarella v. United States*, 445 U.S. 222, 228 (1980); *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993).  The duty to disclose arises in the following circumstances: (1) when the

- 16 -

1 defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant

2 had exclusive knowledge of material facts not known to the plaintiff; (3) when the

3 defendant actively conceals a material fact; and (4) when the defendant makes

4 partial representations but also suppresses some material facts. *LiMandri v.*

5 *Judkins*, 52 Cal. App. 4th 326, 336 (Cal. Ct. App. 1997).

6      The FAC alleges that Merrill Lynch had a duty to disclose the Leveraged

7 Conversion Trades, but fails to articulate any basis for that duty. *See* FAC ¶ 104.

8 A broker-dealer acquires a duty to disclose material information only if it acts as a

9 fiduciary. *See United States v. Laurienti*, 611 F.3d 530, 539-41 (9th Cir. 2010). A

10 broker "is a fiduciary only when it actually provides investment advice and has the

11 authority to make trades on the client's behalf." *Swinden v. Vanguard Grp., Inc.*,

12 No. C 09-03816, 2009 WL 3415376, at *6 (N.D. Cal. Oct. 21, 2009) (holding that

13 allegations that defendant is an investment company and plaintiff placed funds

14 with defendant is "insufficient to plead the existence of a fiduciary relationship");

15 *see also Peterson v. Sec. Settlement Corp.,* 226 Cal. App. 3d 1445, 1455-57 (Cal.

16 Ct. App. 1991) (broker's duties are limited when it does not provide investment

17 advice). Otherwise, the relationship between a securities broker and a customer is

18 one of creditor-debtor. *See Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 536

19 (2d Cir. 1999) ("[I]n the context of an ordinary broker-client relationship, the

20 broker owes no fiduciary duty to the purchaser of the security.").

21      Here, Plaintiffs make no allegations to support the existence of any fiduciary

22 duty. They also make no allegation of active concealment of information. Thus,

23 there can be no omission claim.

24             **3.**     **Failure to Plead Actual Reliance**

25      The FAC also fails to plead the reliance element of fraud. The FAC

26 addresses reliance in only FAC ¶ 54 and ¶ 106. In both instances, Plaintiffs state

27

28

the legal conclusion upon which they relied, but offer *no factual allegations whatsoever* about the manner of reliance.  This is insufficient because Plaintiffs are required to offer factual allegations to show plausibly that "the representation has played a substantial part, and so has been a substantial factor, in influencing [the Plaintiffs'] decision."  *See Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (Cal. 1997).  The FAC is devoid of any factual allegation that the alleged representations affected any decisions, actions, or inactions by Plaintiffs.

In fact, Plaintiffs have *avoided* making factual allegations about the nature of their reliance, apparently to try to avoid SLUSA preemption.  Paragraph 85 of the initial complaint had alleged, "[i]n reliance on these representations, Plaintiffs continued to keep their investment accounts with Defendants."  Compl., Dkt. No. 1 at ¶ 85.  Defendants moved to dismiss, explaining that the allegation supported SLUSA preemption.  Mot. to Dismiss, Dkt. No. 19-1 at 25.[8]  Plaintiffs then amended, *omitting the allegation*.  *Compare* Compl. ¶ 85 (containing allegation) *with* FAC ¶ 106 (comparable paragraph omitting allegation).  This episode only underscores the lack of any factual allegation of reliance in the FAC.

### 4.    Failure to Plead Intent to Defraud

Furthermore, to successfully plead the "intent to defraud" element of a fraud claim, California law requires both (a) intent to induce reliance and (b) that reliance is reasonably expected.  *See Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85,

---

[8] SLUSA preemption applies to state law claims premised on the assertion that a misrepresentation impacted plaintiff's decision to use a broker-dealer.  *Lim v. Charles Schwab & Co.*, No. 15-cv-02074, 2015 WL 7996475, at *7 (N.D. Cal. Dec. 7, 2015), *appeal docketed*, No. 16-15189 (9th Cir. Feb. 8, 2016); *see also Lewis v. Scottrade, Inc.*, 204 F. Supp. 3d 1064, 1068 (E.D. Mo. 2016), *appeal docketed*, No. 16-3808 (8th Cir. Oct. 3, 2016); *Zola v. TD Ameritrade, Inc.*, 172 F. Supp. 3d 1055, 1073 (D. Neb. 2016); *SEC v. Crowe*, No. 2:16-cv-36, 2016 WL 6125401, at *11 (E.D. Ohio Oct. 20, 2016).

- 18 -

92-93 (Cal. Ct. App. 2001).  The FAC contains literally no allegations—not even a legal conclusion—addressing these elements.

### 5.    Failure to Plead Damages

Finally, as set forth in Section II, *supra*, Plaintiffs have failed to plead any actual damages resulted from the alleged fraud.

Accordingly, the Court should dismiss Plaintiffs' claim for fraud.[9]

### B.    Plaintiffs' Negligence Claim Fails (Count II)

Plaintiffs' negligence claim is based on a theory that Defendants "fail[ed] to disclose their investment practices to Plaintiffs and the members of the Class, specifically their use of Leveraged Conversion Trades, without their knowledge or consent."  FAC ¶ 120.  Given that Plaintiffs' claim is premised on a failure to disclose, the claim fails for the same reasons that the omission-based fraud claim fails, *i.e.*, lack of duty of disclosure.  *See supra* § III.A.  In the absence of duty, Plaintiffs may not sustain a negligence claim.  9 Witkin, Summary of Cal. Law Torts § 835 (10th ed. 2005).

Plaintiffs cannot alter the result with allegations about negligence per se arising from an SEC Rule violation, citing Cal. Evid. Code § 669.   *See* FAC ¶ 121. State evidence rules such as § 669 do not apply in federal court.  *See* Cal. Evid. Code § 300.  Further, even when § 669 does apply, it does not address the *existence* of duty, but rather supplies a presumption about the "failure of a person to exercise due care."  *See* Cal. Evid. Code § 669(a).  Here, a core flaw of

---

[9] The Court should also strike from the FAC Plaintiffs' prayer for punitive damages.  Punitive damages are only available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice," and the alleged fraud was committed with the intention to deprive Plaintiffs of property or legal rights.  Cal. Civ. Code § 3294.  The FAC is devoid of any allegation that Defendants intended to deprive Plaintiffs of property.

1   Plaintiffs' negligence claim is the lack of duty.  Finally, in any event, § 669 is

2   generally limited in application to "safety statutes, ordinances or regulations," and

3   courts have declined to apply it to instances where, as here, the result would be a

4   negligence cause of action for violation of a federal law that has no private cause

5   of action.  *Sierra-Bay Fed. Land Bank Ass'n v. Superior Court*, 227 Cal. App. 3d

6   318, 333-34 (Cal. Ct. App. 1991) (collecting cases).

7       Finally, as set forth in Section II, *supra*, Plaintiffs have failed to plead any

8   actual damages resulted from the alleged negligence.

9       **C.    Plaintiffs' California Corporations Code Claim Fails (Count III)**

10      Plaintiffs' third and final claim is for violation of California Corporations

11  Code § 27101 (specifying prohibited conduct) and § 27200 (establishing private

12  cause of action).  The claim fails for three distinct reasons.

13      *First*, the claim is time barred.  Actions under § 27200 must be "brought

14  before the expiration of two years after the violation upon which it is based ***or*** the

15  expiration of one year after the discovery by the plaintiff of the facts constituting

16  the violation, whichever shall first expire."  Cal. Corp. Code § 27201 (emphasis

17  added).  The two-year limitation period accrues when the alleged violation occurs,

18  regardless of when plaintiff discovers it.  *See People ex rel. Dept. of Corp. v.*

19  *SpeeDee Oil Change Sys., Inc.*, 95 Cal. App. 4th 709, 724 (Cal. Ct. App. 2002).

20  California case law interpreting similar language in other statutes indicates that this

21  limitation may not be tolled.  *See SEC v. Seaboard Corp.*, 677 F.2d 1301, 1308

22  (9th Cir. 1982) (holding that Cal. Corp. Code § 25506[10] acts as an "absolute" time

23  bar on claims); *In re VeriSign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1221

---

24  [10] California Corporations Code § 25506, like § 27201, provides that actions must

25  be brought "before the expiration of four years after the act or transaction

26  constituting the violation or the expiration of one year after the discovery by the

plaintiff of the facts constituting the violation, whichever shall first expire."

27

- 20 -

28

(N.D. Cal. 2007) (holding that Cal. Corp. Code § 25506 provides "a strict limit that may not be tolled"); *In re Atmel Corp. Derivative Litig.*, No. C 06-4592, 2007 WL 2070299, at *11 (N.D. Cal. July 16, 2007) (same).  Delayed discovery is irrelevant. *See SpeeDee Oil*, 95 Cal. App. 4th at 724 ("[D]elayed discovery or tolling rules do not apply . . . because of the express language of [the statute].").[11]

*Second*, § 27101 on its face does not apply to the allegations of the FAC. The statute provides:

> It is unlawful for any individual, directly or indirectly, in connection with the solicitation, receipt, or collection of, or solicitation of any subscription or contract to pay any contributions, fees, funds, or compensation of any kind, from any owner or holder of any security, for the purpose of protecting, enforcing, or representing the rights of the security owners or holders evidenced by the security, to do any of the following: [list of prohibited fraudulent conduct].

Cal. Corp. Code § 27101.  The FAC contains no allegations about the "solicitation, receipt, or collection" of any fees, or about "protecting, enforcing, or representing the rights of the security owners or holders evidenced by the security."

*Third,* § 27101 requires a misrepresentation or actionable omission.  *See* Cal. Corp. Code § 27101(a)-(d).  As set forth above, Plaintiffs have failed to properly plead the existence of a misrepresentation or actionable omission.

*Finally*, as set forth in Section II, *supra*, Plaintiffs have failed to plead any actual damages resulted from the alleged fraud.

## IV.   SLUSA Bars Plaintiffs' Claims

Even if this court finds that Plaintiffs have otherwise sufficiently pleaded their claims, the SLUSA preempts them.  15 U.S.C. § 78bb(f)(1).  The SLUSA ensures the primacy of federal securities law by mandating the dismissal of any

---

[11] The Court in *SpeeDee Oil* analyzed Cal. Corp. Code §§ 31303 and 31304, which contain similar language to § 27201.

action that is: "(1) a covered class action (2) based on state law claims (3) alleging that defendant made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security." *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1114-15 (9th Cir. 2013).

Here, element one is present because Plaintiffs seek to represent a class of more than 50 individuals. *See* FAC ¶¶ 90-101 (class allegations); 15 U.S.C. § 78bb(f)(5)(B)(i)(I). Element two is present because the FAC alleges state law claims. Element three is present because all of Plaintiffs' claims are based on alleged misrepresentations or omissions. *E.g.,* FAC ¶¶ 105, 120, 125.

With respect to the fourth and fifth elements, SLUSA preemption requires that the action arises "in connection with the purchase or sale of . . . a covered security." *See Freeman Invs., L.P.*, 704 F.3d at 1114; *see also Chadbourne & Park LLP v. Troice*, 134 S. Ct. 1058, 1066 (2014); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 89 (2006). The FAC alleges that Defendants engaged in wrongdoing related to "the manner in which Defendants advised Plaintiffs with respect to the investment of their money." FAC ¶ 117. This is an example of an allegation that meets the fourth and fifth elements. *See Gray v. Seaboard Sec., Inc.*, 126 F. App'x 14, 16-17 (2d Cir. 2005) (holding that SLUSA preempts fraud, contract, and negligence claims "where the breach consists of the provision of investment advice that does not conform to the contract").

Further, SLUSA preemption also applies because Plaintiffs allege that Merrill Lynch violated California Corporations Code § 27101, a statute that addresses fraudulent conduct in connection with securities transactions. *See* Cal. Corp. Code § 27101(a)-(d) (listing elements of offense); *see also* Cal. Corp. Code § 27100 (stating that statute is designed to protect "the rights of the security

- 22 -

1  owners or holders").  The fact that Plaintiffs brought this claim—based on the

2  *exact same securities fraud allegations* as the other claims—further demonstrates

3  that the FAC meets the elements of SLUSA preemption.[12]

4  <center>**Conclusion**</center>

5      The Court should allow this motion, and dismiss the Complaint.

6  Dated: June 16, 2017                Respectfully submitted,

7                      /s/ Janice Brown

8                      BROWN LAW GROUP

9                      Janice P. Brown, Bar No. 114433
                    Noah J. Woods, Bar No. 264823

10                     600 B Street, Suite 1650
                    San Diego, CA 92101

11                     Tel:   (619) 330-1700
                    Fax:   (619) 330-1701

12                     WILMER CUTLER PICKERING HALE
                        AND DORR

13                     Matthew Martens, NJ:047541998,
                    NY:5275631, DC, NC

14                     matthew.martens@wilmerhale.com
                    Timothy Perla, MA: 660447

15                     timothy.perla@wilmerhale.com
                    Harriet Hoder, MA: 679416

16                     harriet.hoder@wilmerhale.com
                    60 State Street

17                     Boston, MA 02109 USA
                    Tel:   +1.617.526.6000

18                     Fax:   +1.617.526.5000

---

19  [12] Another basis for SLUSA preemption exists to the extent Plaintiffs' theory is

20  that misrepresentations induced them to use Merrill Lynch for brokerage services.

21  *See Lim v. Charles Schwab & Co.*, No. 15-cv-02074, 2015 WL 7996475, at *7
(N.D. Cal. Dec. 7, 2015), *appeal docketed*, No. 16-15189 (9th Cir. Feb. 8, 2016);

22  *see also Lewis v. Scottrade, Inc.*, 204 F. Supp. 3d 1064, 1068 (E.D. Mo. 2016),

23  *appeal docketed*, No. 16-3808 (8th Cir. Oct. 3, 2016); *Zola v. TD Ameritrade, Inc.*,
172 F. Supp. 3d 1055 (D. Neb. 2016); *SEC v. Crowe*, No. 2:16-cv-36, 2016 WL

24  6125401, at *11 (E.D. Ohio Oct. 20, 2016).  As explained above in Section III.A.3,
Plaintiffs appear to be trying to avoid making such an allegation.  However, if, now

25  or in the future, Plaintiffs pursue damages based on a continuing customer

26  relationship with Merrill Lynch, that will supply another basis for SLUSA

27  preemption.

<center>- 23 -</center>

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(*Pro Hac Vice* Applications Pending)

Gregory Boden, Bar No. 301779
gregory.boden@wilmerhale.com
350 S. Grand Avenue, Suite 2100
Los Angeles, CA 90071
Tel:   +1.213.443.5300
Fax:   +1.213.443.5400

Attorneys for Defendants, Merrill Lynch
Pierce, Fenner & Smith, Inc. and Merrill
Lynch Professional Clearing Corp.

- 24 -