WILMER CUTLER PICKERING
  HALE AND DORR
Matthew Martens (NJ:047541998, NY:5275631, DC, NC)
Timothy Perla (MA: 660447)
Harriet Hoder (MA: 679416)
60 State Street
Boston, MA 02109 USA
Tel: (617) 526-6000
(*Pro Hac Vice* applications pending)

BROWN LAW GROUP
Janice P. Brown, Bar No. 114433
Noah J. Woods, Bar No. 264823
600 B Street, Suite 1650
San Diego, CA 92101
Tel:   (619) 330-1700
Fax:   (619) 330-1701
Attorneys for Defendants Merrill Lynch
  Pierce, Fenner & Smith, Inc. and Merrill
  Lynch Professional Clearing Corp.

[Additional Defense Counsel Identified in
  Signature Blocks]

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JIAO, and SAMUEL NUNEZ, Individually and On Behalf of All Others Similarly Situated,<br><br>              Plaintiffs,<br>     vs.<br><br>MERRILL LYNCH PIERCE, FENNER & SMITH, INC.; MERRILL LYNCH PROFESSIONAL CLEARING CORP.,<br><br>              Defendants. | Case No. 3:17-cv-00409-L-MDD<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS**<br><br>**[FRCP RULE 9(B), 12(B)(1), 12(B)(2), 12(B)(3), 12(B)(6)]**<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT<br><br>Date:     July 31, 2017<br>Judge:    Hon. M. James Lorenz<br>Ctrm:     5B (5th Floor-Schwartz) |

# MEMORANDUM IN SUPPORT OF
# DEFENDANTS' JOINT MOTION TO DISMISS

## TABLE OF CONTENTS

**Introduction**..................................................................................................................**1**

**Argument** .....................................................................................................................**1**

    I.    This Court Lacks Personal Jurisdiction Over Defendants.................... 1

    II.   Plaintiffs Lack Standing........................................................................... 4

    III.  Plaintiffs Fail to State a Claim for Fraud.............................................. 6

    IV.  The Court Should Dismiss The Negligence Claim................................ 8

    V.   Plaintiffs Have Abandoned Their Corporations Code Claim............... 9

    VI.  SLUSA Bars Plaintiffs' Claims .............................................................. 9

**Conclusion** ................................................................................................................**10**

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allen v. Beverly Hills*,
   911 F.2d 367 (9th Cir. 1990) ............................................................................. 10

*AM Trust v. UBS AG*,
   No. 15-15343, 2017 WL 836080 (9th Cir. Mar. 3, 2017) .................................... 2

*BNSF Ry. Co. v. Tyrrell*,
   137 S. Ct. 1549 (2017) ........................................................................................ 1

*Brayton Purcell LLP. v. Recordon*,
   606 F.3d 1124 (9th Cir. 2010) ............................................................................. 4

*Bristol-Myers Squibb Co. v. Super. Ct.*,
   377 P.3d 874 (Cal. 2016) .................................................................................... 2

*Bristol-Myers Squibb Co. v. Super. Ct.*,
   137 S. Ct. 1773 (2017) ........................................................................................ 3

*Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*,
   769 F.2d 561 (9th Cir. 1985) ............................................................................... 7

*Conservation Force v. Salazar*,
   677 F. Supp. 2d 1203 (N.D. Cal. 2009) .............................................................. 9

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................................ 2

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) .......................................................................................... 1

*Engalla v. Permanente Med. Grp., Inc.*,
   15 Cal. 4th 951 (Cal. 1997) ................................................................................ 8

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ............................................................ 5, 6

*In re DoubleClick, Inc. Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................................................ 6

*In re iPhone Application Litig.*,
 No. 11–MD–02250, 2011 WL 4403963 (N.D. Cal. 2011) .................................. 5

*Gavin v. AT&T Corp.*,
 464 F.3d 634 (7th Cir. 2006) ............................................................................ 10

*Gonzalez v. Planned Parenthood of Los Angeles*,
 759 F.3d 1112 (9th Cir. 2014) ............................................................................ 3

*Gray v. Seaboard Sec., Inc.*,
 126 F. App'x 14 (2d Cir. 2005) ........................................................................ 10

*Henderson v. United Student Aid Funds, Inc.*,
 No. 13-cv-1845, 2015 WL 12658485 (S.D. Cal. Apr. 8, 2015) .......................... 2

*Hosking v. Hellas Telecomm. (Lux.) II SCA*,
 524 B.R. 488 (Bankr. S.D.N.Y. 2015) ................................................................ 3

*In re Commodity Exch. Inc.*,
 213 F. Supp. 3d 631 (S.D.N.Y. 2016) ................................................................ 2

*In re Jetblue Airways Corp. Privacy Litig.*,
 379 F. Supp. 2d 299 (E.D.N.Y. 2005) ................................................................ 6

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
 No. 11 MDL 2262 NRB, 2015 WL 6243526 (S.D.N.Y. Oct. 20,
 2015) .................................................................................................................. 3

*King v. Am. Family Mut. Ins. Co.*,
 632 F.3d 570 (9th Cir. 2011) .............................................................................. 2

*LaSala v. UBS, AG*,
 510 F. Supp. 2d 213 (S.D.N.Y. 2007) .............................................................. 10

*Leboce, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
 709 F.2d 605 (9th Cir. 1983) .............................................................................. 7

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
 647 F.3d 1218 (9th Cir. 2011) ............................................................................ 1

*Mendoza v. Goff*,
 No. C 13-4773, 2014 WL 10748573 (N.D. Cal. Apr. 16, 2014) ........................ 6

- iii -
DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:17-cv-00409-L-MDD

*Morse v. Crocker Nat'l Bank*,
    142 Cal. App. 3d 228 (Cal. Ct. App. 1983) .......................................................... 7

*Ranza v. Nike*,
    793 F.3d 1059 (9th Cir. 2015) ............................................................................. 4

*Rhodehouse v. Ford Motor Co.*,
    No. 2:16-cv-01892-JAM-CMK, 2016 U.S. Dist. LEXIS 167780
    (E.D. Cal. Dec. 2, 2016) ...................................................................................... 4

*Stoody-Broser v. Bank of Am.*,
    442 F. App'x 247 (9th Cir. 2011) ........................................................................ 9

*Van de Kamp v. Bank of Am.*,
    204 Cal. App. 3d 819 (Cal. Ct. App. 1988) ......................................................... 7

*United States v. Laurienti*,
    611 F.3d 530 (9th Cir. 2010) ........................................................................... 7, 8

*Walsh v. Nev. Dep't of Human Res.*,
    471 F.3d 1033 (9th Cir. 2006) ............................................................................. 9

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ............................................................................. 2

## STATUTES, RULES, AND REGULATIONS

17. C.F.R. § 240.15c3-3 .................................................................................................. 6

Cal. Evid. Code § 669 .................................................................................................... 9

Employment Retirement Income Security Act ("ERISA") ........................................... 6

Fed. R. Civ. P. 9(b) ........................................................................................................ 6

Securities Litigation Uniform Standards Act ............................................. 1, 8, 9, 10

## Introduction

The Opposition ("Opp.") does not forestall dismissal. Plaintiffs: (i) cite no authority to refute controlling precedent establishing that this Court lacks personal jurisdiction; (ii) fail to salvage their incorrect theories of injury; (iii) do not address Defendants' arguments regarding the reliance and falsity elements of fraud; (iv) fail to address, and therefore concede, multiple deficiencies in the negligence and Corporations Code claims; and (v) cannot refute that any surviving claim would be barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). Plaintiffs have now had two opportunities to plead viable claims, and have failed. The Court should dismiss the FAC with prejudice.

## Argument

### I. This Court Lacks Personal Jurisdiction Over Defendants

Despite recent and clear guidance from the Supreme Court, Plaintiffs misunderstand—and therefore misapply—the law on personal jurisdiction. As to general jurisdiction, Defendants showed in their opening Memorandum ("Mem.") that their California contacts are not pervasive enough to render them "at home" under *Daimler AG v. Bauman*. 134 S. Ct. 746, 751 (2014). Plaintiffs attempt to distinguish *Daimler* on the basis that it dealt with a subsidiary's actions and those of its foreign parent, but that argument was expressly rejected by the Supreme Court just two months ago in *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (constitutional due process constraint expressed in *Daimler* "does not vary with the type of claim asserted or business enterprise sued").[1] In cases with facts like those here, courts have declined to find general jurisdiction. Mem. at 7-8.

Undeterred, Plaintiffs argue that two facts support the exercise of general jurisdiction: (1) MLPF&S has a branch office in San Diego and (2) Defendants

---

[1] Plaintiffs inexplicably rely on a pre-*Daimler* decision in which the Ninth Circuit nonetheless *declined* to find general jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1225 (9th Cir. 2011).

- 1 -

have appointed agents for service of process in California.[2]  First, the existence of a MLPF&S branch office in San Diego does not render it "at home" in California. *See Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 980-81 (N.D. Cal. 2016) (no general jurisdiction although defendants had multiple offices and facilities in California); *Henderson v. United Student Aid Funds, Inc.*, No. 13-cv-1845, 2015 WL 12658485, at *2-3 (S.D. Cal. Apr. 8, 2015) (same).

Second, Defendants' appointed agents for service of process do not support general jurisdiction.  Although there is currently a circuit split on this issue, the Ninth Circuit held just this year that the California registration statute "does *not* require corporations to consent to general personal jurisdiction in that state when they designate an agent for service of process or register to do business." *AM Trust v. UBS AG*, No. 15-15343, 2017 WL 836080, at *1 (9th Cir. Mar. 3, 2017) (emphasis added); *see also Bristol-Myers Squibb Co. v. Super. Ct.*, 377 P.3d 874, 884 (Cal. 2016) ("The designation of an agent for service of process and qualification to do business in California alone are insufficient to permit general jurisdiction." (quotation marks omitted)), *rev'd on other grounds*, 137 S. Ct. 1773 (2017).  Indeed, the only Ninth Circuit case Plaintiffs cite, *King v. American Family Mutual Insurance Co.*, held that appointment of an agent for service of process was *not* sufficient to confer jurisdiction.  632 F.3d 570, 579 (9th Cir.

---

[2] Plaintiffs also argue that MLPro is an alter ego of MLPF&S because it is a subsidiary.  Defendants cited multiple cases debunking that position, to which Plaintiffs do not respond.  Mem. at 9.  In the case cited by Plaintiffs, *In re Commodity Exch. Inc.*, the plaintiffs alleged, among other things, that the alter ego company had no corporate headquarters or separate mailing address.  213 F. Supp. 3d 631, 681-82 (S.D.N.Y. 2016).  In contrast, Plaintiffs pleaded no additional facts to support a finding that MLPro satisfies the alter ego test.  *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (stating test).  Moreover, Plaintiffs cannot claim that MLPro is both the alter ego of MLPF&S and a separate entity, as they do in the FAC (¶¶ 16, 21) and Opposition (pages 5, 11).

2011). All of the other cases cited by Plaintiffs are from other circuits and are inapplicable here.[3]

Nor have Plaintiffs established specific jurisdiction. As an initial matter, the Supreme Court recently underscored that there can be no specific jurisdiction absent a direct connection between the defendants' forum-related activities and the plaintiff's claims. *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017) ("When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."). Plaintiffs openly admit that their claims "must arise out of Defendants' forum-related activities" (Opp. at 11), but fail to allege any direct connection here. The SEC Release attached to the FAC establishes—and Plaintiffs do not deny—that the Leveraged Conversion Trading took place in MLPF&S's or MLPro's offices, which are based in New York. SEC Rel. ¶¶ 1-2. Although the Leveraged Conversion Trading impacted the net amount Defendants were required to maintain in the Reserve Account, the trades did not actually involve Plaintiffs' money or accounts opened in California. *See* SEC Rel. ¶¶ 14-50.[4]

---

[3] Plaintiffs' reliance on the bankruptcy court's decision in *Hosking v. Hellas Telcommunications. (Lux.) II SCA*, 524 B.R. 488, 507-08 (Bankr. S.D.N.Y. 2015) is misplaced, because the Southern District of New York later disagreed with the *Hellas* court's finding of personal jurisdiction. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *26 (S.D.N.Y. Oct. 20, 2015).

[4] Unable to address the point that the trading did not impact Plaintiffs' accounts, they ask the Court to ignore it on their theory that Merrill Lynch is somehow requesting factual findings or introducing facts. Opp. at 16-17. But the SEC Release that Plaintiffs attached to the FAC explains how the trading works, including that nothing was removed from a customer account. The Court is not required to accept as true allegations that directly contradict documents attached to the complaint. *See Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014) (court may ignore allegations where "one cannot plausibly conclude" a claim exists in light of contradiction between pleadings and an exhibit).

In any event, the cases Plaintiffs rely upon are inapposite. In *Brayton Purcell LLP v. Recordon*, the defendant's actions were specifically directed at the Northern California-based plaintiff when the defendant copied plaintiff's website and directed his website at the same customers located in Northern California. 606 F.3d 1124, 1128, 1130 (9th Cir. 2010). Similarly, in *Rhodehouse v. Ford Motor Co.*, the plaintiff was physically injured in California by his Ford motor vehicle. No. 2:16-cv-01892, 2016 U.S. Dist. LEXIS 167780, at *7-8 (E.D. Cal. Dec. 2, 2016). Plaintiffs' reliance on *Ranza v. Nike* is also puzzling, because specific jurisdiction was not at issue there. 793 F.3d 1059, 1069 (9th Cir. 2015).

## II. Plaintiffs Lack Standing

Plaintiffs cannot escape the SEC's finding that the Leveraged Conversion Trades did not harm customers. SEC Rel. at ¶ 50 ("no customers were harmed"). Indeed, far from refuting that finding, Plaintiffs now concede (as they must) that they "do not contend that the Leveraged Conversion Trades caused [them] to take a loss." Opp. at 14. Against this background, none of Plaintiffs' three arguments successfully conjures injury.

First, Plaintiffs offer no basis for the assertion that they suffered "damages from being denied legal interest . . . to which they are rightfully entitled from Defendants' use of Plaintiffs' funds without their knowledge or consent, which essentially amounts to an illegal loan of Plaintiffs' funds." Opp. at 14-15. As noted above, the dispositive point is that *nothing ever was removed from Plaintiffs' accounts*. As explained in the SEC Release, the Leveraged Conversion Trades involved a loan of Merrill Lynch's *own* funds (via margin loan), a purchase of securities from *Merrill Lynch* inventory, and reduction in the balance of Merrill Lynch's *own* Reserve Account. Thus, no "opportunity" or interest was lost and the Leveraged Conversion Trades did not prevent Plaintiffs from withdrawing, investing, or loaning all money in their accounts, at any time. Assertions about lost opportunity—absent plausible, specific allegations of what opportunity was lost,

how Plaintiffs could and would have taken advantage of it but were prevented, and the calculable financial loss—are impermissibly speculative. *See In re iPhone Application Litig.*, No. 11–MD–02250, 2011 WL 4403963, at *5-6 (N.D. Cal. 2011).

Second, Plaintiffs provide no supporting allegations for the conclusory statement that they were injured because the Leveraged Conversion Trades subjected them to risk of loss if Merrill Lynch failed. Opp. at 15; FAC ¶ 49. Plaintiffs do not assert that Merrill Lynch was at risk of failing during the putative class period, or that the Leveraged Conversion Trades increased a risk of loss in the event of such failure. The possibility that Defendants' actions increased Plaintiffs' risk of loss, without a showing of any actual loss or impact of that increased risk, is the kind of speculative injury that does not confer standing. *See* Mem. at 11-12 (citing cases).

Third, Plaintiffs' allegation that Defendants failed to share profits with them is similarly unfounded. They appear to base that claim on the same theory as their first claim for injury: "lost income due to loaning their assets to Merrill Lynch or lost income or gains they each would have made had had (sic) subjected his investments to these same risks independently, without Merrill Lynch." Opp. at 15. Once again, Plaintiffs have not alleged facts sufficient to support a finding that they had and lost an opportunity to loan money or that they had any right to Merrill Lynch's profits on the Leveraged Conversion Trades. *See supra* at 4-5.

The cases Plaintiffs cite lend no support to their arguments. In *Fraley v. Facebook, Inc.*, Plaintiffs were injured by a violation of their statutory right of publicity under a California statute. 830 F. Supp. 2d 785, 796 (N.D. Cal. 2011). Similarly, in *Mendoza v. Goff*, plaintiff alleged that he was statutorily entitled to ERISA benefits. No. C 13-4773, 2014 WL 10748573, at *2 (N.D. Cal. Apr. 16, 2014). There is no corresponding statutory right that Plaintiffs can point to here. Rather, the asserted injury here is more analogous to the cases relied upon by

defendant in the *Fraley* case. *See, e.g.*, *In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327 (E.D.N.Y. 2005) (unauthorized disclosure of plaintiffs' personal information to third party was not actionable contract damage that had any value); *In re DoubleClick, Inc. Privacy Litig.,* 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) (holding that economic value of the collection of demographic consumer data was not an actionable economic loss to the individual consumer).

Accordingly, Plaintiffs lack standing and have inadequately pleaded damages with particularity as required by Rule 9(b).

### III.     Plaintiffs Fail to State a Claim for Fraud

The Opposition does not cure three separate flaws of the fraud claim.

<u>Lack of a Misrepresentation</u>**:**  As Defendants already showed, the FAC's allegations of false statements are incorrect because they reflect a fundamental misunderstanding of Rule 15c3-3 and Leveraged Conversion Trading.  Mem. at 16.  Rule 15c3-3 separately imposes: (i) a segregation requirement for customer *securities*, and (ii) a reserve requirement relating to customer *cash*.  *Id.*  Leveraged Conversion Trading can impact cash reserves, but has nothing to do with (and does not compromise) securities segregation.  Thus, any representations about securities segregation cannot possibly be rendered false by the existence of Leveraged Conversion Trades.  *Id.*

Notwithstanding that Defendants already explained this at length, the Opposition does not acknowledge, let alone refute, it.  Instead, Plaintiffs devote their entire falsity argument to the incomprehensible assertion that representations about asset segregation were somehow rendered false by Leveraged Conversion Trades.  Opp. at 17.  As a result, the Opposition merely confirms that Plaintiffs have not alleged the existence of a false statement.

Finally, the Court should not permit Plaintiff to amend yet again to add Exhibit B.  It would not supply a cogent falsity allegation.  Exhibit B is a document that on its face is dated in 2016—four years after the end of the putative class

- 6 -

1  period.  Further, Exhibit B is irrelevant because it contains statements about asset
2  segregation which, again, have nothing to do with Leveraged Conversion Trading.
3        <u>No Duty to Support Omission</u>:  Despite conclusory allegations that a duty to
4  disclose existed, Plaintiffs have still not alleged a basis for such a duty.  Plaintiffs
5  allege that they deposited cash with MLPF&S.  But that only creates a debtor and
6  creditor relationship.  *Morse v. Crocker Nat'l Bank*, 142 Cal. App. 3d 228, 232
7  (Cal. Ct. App. 1983) ("It is axiomatic that the relationship between a bank and its
8  depositor arising out of a general deposit is that of a debtor and creditor.").  Absent
9  a fiduciary relationship, Merrill Lynch owed no duty to Plaintiffs to disclose
10 information.  *See Van de Kamp v. Bank of Am.*, 204 Cal. App. 3d 819, 861-62 (Cal.
11 Ct. App. 1988).  (holding that bank owed no duty to an account holder to disclose
12 use of account funds for the bank's own profit).
13       Plaintiffs cite *Leboce, S.A. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
14 which supports the absence of duty to disclose here.  709 F.2d 605, 607 (9th Cir.
15 1983).  Under *Leboce*, a broker-dealer only owes a fiduciary duty if it either
16 exercises continuing control over the account or acts as an investment counselor.
17 *Id.*; *see also Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*,
18 769 F.2d 561, 567 (9th Cir. 1985).  There are no such allegations here.  Nor does
19 *United States v. Laurienti* aid Plaintiffs' assertions.  611 F.3d 530 (9th Cir. 2010).
20 In *Laurienti*, the court held that the broker-dealer should have disclosed the
21 substantial commissions it received from selling stocks because it executed the
22 transactions for its investors.  *Id.* at 534, 541.  Here, there is no allegation in the
23 FAC that would give rise to a special relationship creating a duty to disclose.
24 Plaintiffs do not allege that any purported class member received any advice from
25 Merrill Lynch or its Structured Equity Financing and Trading desk.  Moreover, any
26 assertion that Plaintiffs received investment advice contradicts their statement
27 (made in an attempt to avoid SLUSA preemption) that their allegations have
28 "nothing to do with a sale or purchase of securities by Plaintiffs."  Opp. at 23.

1          No Reliance:  Finally, although Defendants addressed at length the lack of
2   any pleaded allegations of reliance (Mem. at 17-18), Plaintiffs offer no response.
3   *See* Opp. at 17-19 (making only conclusory allegations).  This alone is dispositive.
4   If Plaintiffs did or failed to do something because of a statement by Defendants,
5   then it would not be difficult for them to so allege.[5]  Yet, they have not done so in
6   the FAC, and have declined even to address the problem in the Opposition after
7   Defendants highlighted it.  Without a cogent allegation of reliance, Plaintiffs have
8   no claim.  *See Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (Cal.
9   1997) (Plaintiff must allege that "the representation has played a substantial part,
10  and so has been a substantial factor, in influencing [the Plaintiffs'] decision.").

**IV.    The Court Should Dismiss The Negligence Claim**

          Merrill Lynch already showed that Plaintiffs cannot maintain a negligence claim because they have failed to properly allege a duty to disclose or damages. *See supra* §§ II, III.  Plaintiffs also do not respond to, and thus concede, that negligence per se under Cal. Evid. Code § 669 does not apply here.  *Compare* Mem. at 19-20 (making argument) *with* Opp. (failing to respond); *see Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (failure to defend claim in opposition to motion to dismiss amounted to abandonment of claim); *Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.").

---

[5] If anything, the Opposition only further undermines any possibility of reliance because Plaintiffs state that "the fraud alleged occurred <u>after</u> Plaintiffs had already become clients of Defendants and invested their assets." *Id.* at 23.  This only underscores that Plaintiffs cannot allege that they took—or failed to take—any action in reliance on a challenged statement.

## V.  Plaintiffs Have Abandoned Their Corporations Code Claim

Plaintiffs abandoned their Corporations Code claim by failing to respond to Merrill Lynch's argument that the claim is time-barred and inapplicable. *Walsh*, 471 F.3d at 1037; *Conservation Force*, 677 F. Supp. 2d at 1211.

## VI.  SLUSA Bars Plaintiffs' Claims

Plaintiffs concede that the FAC meets all but one necessary element for SLUSA preemption. *Compare* Mem. at 22 (demonstrating that FAC satisfies all five elements for SLUSA preemption) *with* Opp. at 23 (disputing only fourth element). And Plaintiffs offer no cogent response to Defendants' argument that the FAC satisfies the fourth element, *i.e.,* the "in connection with" requirement.[6]

The fourth element is met because Plaintiffs allege Merrill Lynch executed Leveraged Conversion Trades *of securities* to lower its Reserve Account amount, and that the wrongdoing related to "the manner in which Defendants advised Plaintiffs with respect to the investment of their money." FAC ¶ 117; *see Stoody-Broser v. Bank of Am.*, 442 F. App'x 247, 248 (9th Cir. 2011) (affirming dismissal under SLUSA where defendant breached its fiduciary duty by failing to inform the trusts that it would be investing customer funds in the bank's affiliated mutual funds); *Gray v. Seaboard Sec., Inc.*, 126 F. App'x 14, 16-17 (2d Cir. 2005).

Plaintiffs' cited cases support SLUSA preemption. The *LaSala v. UBS, AG* court stated that if the broker-dealer "facilitated the sale of the [securities]" then the claims may be precluded by SLUSA. 510 F. Supp. 2d 213, 243 (S.D.N.Y. 2007). The *Gavin v. AT&T Corp.* court held that fraudulent omissions did not invoke SLUSA because they were made months after securities transactions. 464 F.3d 634, 638 (7th Cir. 2006). Both cases are distinguishable from the alleged conduct here, which directly involves securities trading.

---

[6] It is, at a minimum, ironic that Plaintiffs base their FAC almost entirely on a settlement with the SEC (i.e., the regulator of securities transactions), and yet deny that their case arises in connection with any securities transactions.

Finally, the Court should not allow Plaintiffs to further amend to attempt to plead around SLUSA. *See* Opp. at 23 n.9. Plaintiffs offer no explanation of how they might reshape their claims to avoid meeting the "in connection with" requirement, which is unsurprising because the case fundamentally relates to securities trading. *See Allen v. Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990) (no leave to amend "when the movant presented no new facts but only new theories and provided no satisfactory explanation for his failure to fully develop his contentions originally") (citations omitted). Further, Plaintiffs have already had a chance to amend in response to the SLUSA argument in Defendants' first motion to dismiss. Yet Plaintiffs chose to amend, and filed a FAC containing allegations that still trigger SLUSA preemption, presumably because they felt they needed the allegations to meet other claim elements such as reliance and damages. Having already had that opportunity, the Court should not grant yet another one.[7]

### Conclusion

The Court should grant Defendants' motion to dismiss with prejudice.

Dated: July 21, 2017

Respectfully submitted,

/s/ Janice Brown
BROWN LAW GROUP
Janice P. Brown, Bar No. 114433
Noah J. Woods, Bar No. 264823
600 B Street, Suite 1650
San Diego, CA 92101
Tel:   (619) 330-1700
Fax:   (619) 330-1701

WILMER CUTLER PICKERING
    HALE AND DORR
Matthew Martens, NJ:047541998, NY:5275631, DC, NC
matthew.martens@wilmerhale.com
Timothy Perla, MA: 660447
timothy.perla@wilmerhale.com
Harriet Hoder, MA: 679416
harriet.hoder@wilmerhale.com

---

[7] Moreover, if Plaintiffs were to amend to add allegations that they relied on challenged statements in order to continue to do business with Merrill Lynch, that would create a second basis for SLUSA preemption. Mem. at 23 n.12.

- 10 -

1 | 60 State Street
2 | Boston, MA 02109 USA
  | Tel:  +1.617.526.6000
3 | Fax:  +1.617.526.5000
  | (*Pro Hac Vice* applications pending)

4 | Gregory Boden, Bar No. 301779
  | gregory.boden@wilmerhale.com
5 | 350 S. Grand Avenue, Suite 2100
  | Los Angeles, CA 90071
6 | Tel:  +1.213.443.5300
  | Fax:  +1.213.443.5400

7

8 | Attorneys for Defendants, Merrill Lynch Pierce, Fenner & Smith, Inc. and Merrill Lynch Professional Clearing Corp.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 11 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:17-cv-00409-L-MDD